In the Matter of TRINITY PLACE COMPANY, Respondent, *v.* FINANCE ADMINISTRATOR OF THE CITY OF NEW YORK et al., Appellants.

First Department, December 30, 1974.

*James J. McGowan* of counsel (*Edward J. McLaughlin* and *Edith I. Spivack* with him on the brief; *Adrian P. Burke, Corporation Counsel*), for appellants.

*John L. Diamond* (*Harry H. Chambers* with him on the brief), attorney for respondent.

YESAWICH, J. This appeal is from a judgment reducing the real estate tax assessments for the tax years 1970–1971 through 1973–1974, on the southerly portion of a site occupied by the U. S. Steel building at 1 Liberty Plaza.

The site consists of two city blocks, separated by Liberty Street. The southern block has a ground area of 32,765 square feet and extends south to Cedar Street. The northern block has a ground area of approximately 68,440 square feet and extends north to Cortlandt Street. Each of these parcels is designated with a different block and lot number on the official tax map.

The two blocks were purchased in separate transactions by a U. S. Steel Corporation (U. S. Steel) nominee in 1962 and were conveyed in a single transaction to U. S. Steel in 1964 for a purchase price of $27,700,000. In 1968 U. S. Steel purchased the street bed of the now closed Temple Street, located in the southern block, from the city, for a purchase price of $365,000.

On the properties acquired U. S. Steel planned to construct two modern office buildings, one on each block, but those plans had to be altered when two tenants in the southern block refused to surrender their tenancies. Plans for a single new building having approximately the same amount of building area as that contained in the originally planned two buildings were then prepared. Because neither block afforded sufficient area to enable U. S. Steel to erect this proposed building in compliance with the height, setback and ground coverage requirements of the zoning law it applied to the City Planning Commission for a

special permit authorizing that both blocks be treated as a single zoning development or site. The application proposed erection on the northern block of a 54-story office building with a floor area in excess of that permitted by right for the northern block but not in excess of the total floor area permitted for the two blocks as a whole. On at least 50% of the entire site U. S. Steel proposed to maintain an open landscaped area, variously described as a plaza or park.

U. S. Steel's application to have these separate blocks treated as a unified site was approved on condition that no building or other structure above or below the plaza grade would be erected on the southerly block of the development, including Temple Street, without the prior consent of the City Planning Commission and the Board of Estimate. In May, 1968 the city and U. S. Steel executed an agreement containing this condition.

Later that year U. S. Steel leased the entire site of vacant land, as a single parcel, to respondent for an annual rental of $2,430,000. In 1969 the site was sold as a single parcel subject to the existing ground lease, for $36,000,000.

Erection of the office building was completed in 1974. The structure covers approximately 55% of the ground area of the northern block and is surrounded by a plaza or open space on all four sides.

At issue are the assessments on the southern block only. For the years 1970–1971 through 1973–1974 the southerly block has been assessed at $6,500,000. The Special Referee reduced these assessments to $200,000 for the year 1970–1971 and to $150,000 for the subsequent years.

Perceiving the southern block as a parcel completely separate from the northern block, the Special Referee found the requirement that the southern block be devoted to a plaza was a restrictive covenant which created an easement for the benefit of the public thus rendering the southern block unmarketable and virtually valueless. In our view the northern and southern blocks should not have been treated as completely separated entities for each parcel lost its individual status when U. S. Steel succeeded in obtaining authorization from the City Planning Commission to develop these two blocks as a single zoning unit.

Initially it should be noted that it was U. S. Steel, in the exercise of its value judgment, who voluntarily decided that the erection of one large office building with a plaza was desirable. (Cf. *Matter of Seagram & Sons* v. *Tax Comm.*, 18 A D 2d 109, affd. 14 N Y 2d 314.) To accomplish this end it was essential for U. S. Steel to persuade the City Planning Commission to grant

permission for the erection and continued existence of a building of larger bulk than would otherwise be allowed on the northerly parcel. The fact that in granting that permission the City Planning Commission did so on condition that the southerly parcel would be burdened with a covenant restricting its use, does not support a finding that the parcel has only nominal value for it is precisely because of this restriction that U. S. Steel was able to induce the City Planning Commission to act favorably on its request. As a result of that action, in the absence of the City Planning Commission and Board of Estimate's consent, these two parcels are inextricably bound together.

And as has already been observed the May 1968 agreement does not absolutely prohibit the erection of any structures on the plaza site but only mandates that permission first be obtained before erection begins. Since this restriction does not exclude a beneficial use of the fee by its owners, a finding that the southern parcel had only nominal value was inappropriate. (*Matter of City of New York* [*Public Beach*], 269 N. Y. 64, 70.)

Admittedly the usual rule, although not without exception, is that when an appurtenant easement is valued for tax purposes, the value of the dominant estate is increased by the existence of the easement while the servient estate's value is thereby reduced. (*Tax Lien Co.* v. *Schultze*, 213 N. Y. 9, 11; 1 Bonbright, Valuation of Property, p. 497.) To apply this rule, as it is commonly understood, a dominant estate must exist. Here neither the public nor the fee owner's interest in the plaza can be truly classified as such.

The essential issue is whether the entire value of the easement is properly allocable to only one of these two interests. While the benefit accruing to the public diminishes the value of the total development, to hold that this benefit alone reduces the southerly parcel to nominal value discounts the significant benefit which was and is being derived by the fee owners.

The circumstance that the southern and northern portions of the development were designated on different block and lot numbers on the city's official tax map is of no consequence to the determination of the value of the southern portion in relation to the unified whole.

Since respondent has not met its burden of demonstrating that the subject parcel was improperly assessed and respondent does not urge that the assessments on the components of the entire development exceed the value of the whole, the original assessments must be reinstated.

The judgment appealed from should be reversed on the law and on the facts, the original assessments reinstated and the petition dismissed, with costs and disbursements to appellants.

McGIVERN, P. J., and NUNEZ, J., concur with YESAWICH, J.; MARKEWICH and LUPIANO, JJ., dissent and would affirm on opinion of Special Referee WILLIAM C. HECHT, JR.

Judgment, Supreme Court, New York County, entered on December 10, 1973, reversed, on the law and on the facts, the judgment vacated, the original assessments reinstated and the petition dismissed. Appellants shall recover of petitioner-respondent $60 costs and disbursements of this appeal.