Fuchsberg, J.
 

 The question before us is whether the City of New York may reflect in its tax assessments the benefits it has afforded to a private owner under zoning resolutions which provide for incentive zoning developments, where the owner has dedicated part of its land to the public under these resolutions in return for substantial advantages which the dedication directly confers on its remaining land.
 

 Appellant leases
 
 [1]
 
 two city blocks in downtown Manhattan,
 
 *147
 
 on which it constructed, in 1970, a large office building and an open plaza. The original owner of the land, United States Steel Corporation, had planned to construct two office buildings, one on each block, but was forced to consider other alternatives when some of the tenants on the southern block refused to move. Its solution, arrived at with the aid of special city zoning provisions, was to build only one office building, located on the northern block, but a building with as large a floor area as would ordinarily be permitted on both lots together, and to dedicate at least 50% of the land area, including the entire southern block as well as the remaining portion of the northern block, as an open plaza for use by the public.
 

 City zoning ordinances permit such a compromise. (Zoning Resolution, § 74-74.) Under these provisions, the two-block parcel is treated as a single, unitary "zoning development”. The plaza is exacted as the price for the permit to build a much larger structure than is otherwise allowed on the remaining land. (§ 74-742.)
 

 The appellant nevertheless challenged its tax assessment for the years 1970-1974 on the grounds that the plaza portion of the land is now, for all intents and purposes, valueless and should be so assessed. That portion was taxed on an assessed valuation of $6,500,000 during the years in question. The land under the northern block was, during those years, assessed at $13,700,000. These figures represent the same assessment values which obtained before the rezoning permitted the combined building and plaza arrangement; they have not been altered to reflect the complementary use of the two blocks.
 

 The special referee, noting that, under the agreement with the city, the plaza area may not be utilized for any other purpose without the city’s permission, held that the land was indeed valueless and burdened with an easement which rendered it totally unmarketable. The referee then applied horn-book law to the effect that land which is unmarketable may not be taxed as though it were salable, and reduced its assessed value for the four years in question, from $6,500,000 to $150,000, citing
 
 People ex rel. Poor v Wells
 
 (139 App Div 83, affd 200 NY 518);
 
 People ex rel. Topping v Purdy
 
 (143 App Div 389, affd 202 NY 550); and
 
 People ex rel. Gale v Tax Comm. of City of N. Y.
 
 (17 AD2d 225).
 

 The Appellate Division reversed, two Justices dissenting. The majority found that the provision that no change in use
 
 *148
 
 be made with respect to the plaza area without city permission was not such a restriction as might make the land totally unmarketable and noting, properly, the extent to which the zoning law treats the parcel as a single unit. (46 AD2d 373.) The dissenters agreed with the special referee.
 

 We affirm the order of the Appellate Division. In enumerating the factors which are relevant here, we find the following ones significant.
 

 First, the city resolution under which the "zoning development” is created not only states in terms that it applies to parcels composed of two or more separate city blocks (§ 74-741, subd [a]) but also notes that the resulting development is not expected to correspond to the definition of a "lot” as shown on the tax maps of the city. (§ 12-10.) In so doing, it acknowledges that there may be potential conflicts and, as we read it, resolves these in favor of recognition of the unitary nature of the zoning development it creates.
 

 Second, the tax assessments on these two blocks have not changed since the zoning regulation was applied. The two blocks are assessed now at the same rates which applied in 1969; thus there has been no compensating increase in the rates applied to the northern block to allow for the oversized building. Instead, the city continues to treat the two parcels as though each were capable of supporting the ordinary-sized office building. In our view, this is an entirely permissible method of treating, for tax purposes, the quid pro quo entered into between United States Steel and the city, since the floor area added to the northern portion, over and above what would ordinarily be allowed, is precisely the floor area originally determined for the plaza block.
 

 Third, the two separate blocks were originally purchased by a U. S. Steel Corporation nominee, were then sold to U. S. Steel as a single parcel and were subsequently resold by it to the present owner. The resale price for the assembled package, after rezoning, exceeded by a very considerable margin the sum of the original acquisition prices for the two blocks separately, further indicating that the southern or plaza block is, under the zoning arrangement, anything but worthless. Moreover, appellant’s rental agreement reflects the same pro rata recognition of the value of the southern block. (See
 
 Matter of Seagram & Sons v Tax Comm. & City of N. Y.,
 
 18 AD2d 109, affd 14 NY2d 314.)
 

 Fourth, we are not called upon here to determine how the
 
 *149
 
 southern block should be assessed if it were held by a separate owner. It is not so held now. The case law cited by the referee below to support the proposition that, where an owner cannot market land encumbered with easements creating a park, he may not be taxed as though it were marketable, dealt exclusively with situations in which the owners of the park land were distinct from the owners of the land benefited by the easements. There was, in those cases, no equitable or legal reason why such an owner, whose land has not assumed the burdens as compensating benefit for other advantages, should pay taxes, for he owns nothing of value. Here, however, the land is all held by one owner, who benefits from its larger building while it yields the use of the plaza land. Such an owner may not ignore the real and continuing interrelationship between the block that carries the building and the one that locates it on an open plaza. Just as the application to have the two parcels declared one zoning unit was made in order to meet the owner’s needs, so also may it, and any subsequent owners, be held accountable for the results of that decision. It may not now disavow the deal for tax purposes.
 
 [2]
 

 Finally, the fact that the plaza land may not be used for other purposes without city permission is not determinative of its value. It is true that this restriction constitutes a very real limitation on the separate marketability of the plaza land, but, as we have already pointed out, the owner has recouped this loss on the northern block. In addition, we note that such a provision for future use with city permission is not a mere detail. If, in the future, when the office building on the northern block has outlived its usefulness, a different arrangement on the two-block parcel is desired, it is more than likely that the city will stand ready to renegotiate the use of the entire parcel, just as it has made an effort to accommodate the owner in this instance. What has been zoned can be rezoned. The presence in the agreement with the city of the provision permitting a change at a later date is thus an important one, since it reflects the negotiated, mutually accommodating nature of the agreement under which the disputed plaza exists.
 

 The negotiated nature of the agreement cannot be overemphasized. The city resolutions under which this arrangement is made possible are an example of what various commenta
 
 *150
 
 tors have denominated "incentive” zoning or "bonus” zoning. (See 1 Anderson, New York Zoning Law and Practice, § 8.16, pp 347-349; Marcus and Groves, The New Zoning: Legal, Administrative, and Economic Concepts and Techniques, p 200
 
 et seq.;
 
 Comment, Bonus or Incentive Zoning-Legal Implications, 21 Syracuse L Rev 895; cf.
 
 Jenad, Inc. v Village of Scarsdale,
 
 18 NY2d 78.) While the techniques embodied in such incentive zoning programs are not without their problems, as is to be expected when new ways are developed to meet new conditions, they provide a valuable and flexible tool whereby cities may obtain amenities which they may not otherwise demand of private owners and, at the same time, owners may obtain highly desirable economic advantages. Given the difficulties in land use control and regulation which presently plague our older cities, we should be very careful not to nullify the usefulness of incentive zoning by undercutting the city’s half of the bargain in the manner urged upon us here by appellant.
 

 For all these reasons, we affirm the order of the Appellate Division reinstating appellant’s tax assessments.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Under the terms of its lease, appellant, rather than the owner of the land, is responsible for the payment of the taxes in question. Since, under ordinary circumstances, it is the owner who is liable for taxes and against whose land tax liens will lie, we shall, for the sake of legal clarity, refer to the "owner’s” rights and liabilities herein, with the understanding that appellant happens to stand in the position of an owner by virtue of its lease arrangements.
 

 [2]
 

 . These conclusions also suffice to dispose of appellant’s contention that the tax assessment on the northern block is not before the court procedurally and cannot therefore be utilized to off-set the disputed assessment of the southern block.