In the Matter of 50 OVERLOOK ASSOCIATES, Appellant, v FINANCE ADMINISTRATION OF THE CITY OF NEW YORK et al., Respondents.

First Department, January 10, 1980

## APPEARANCES OF COUNSEL

*Donald N. David* of counsel *(Podell, Rothman, David & Schechter,* attorneys), for appellant.

*Leonard Olarsch* of counsel *(Judith R. Greenwald* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for respondents.

## OPINION OF THE COURT

BIRNS, J.

In this appeal, petitioner seeks a reduction in the tax assessments on premises 50 Overlook Terrace, Borough of Manhattan, City of New York, beyond that awarded by the trial court for the four years hereinafter specified.

The prior assessments and the assessed values determined by the court were as follows:

| Year | Prior Assessment | Assessed Value by Trial Court | Reduction |
|---|---|---|---|
| 1972/73 | $600,000 | $568,000 | $32,000 |
| 1973/74 | $600,000 | $508,000 | $92,000 |
| 1974/75 | $570,000 | $508,000 | $62,000 |
| 1975/76 | $570,000 | $500,000 | $70,000 |

Petitioner's claim that the reductions are insufficient is based, essentially, on the following grounds: First, that the purchase price of the property in 1972 and sales price in 1976 reflect that the true value of the property is less than the value found by the trial court and second, that the capitalization of the property at a reasonable rate of return entitles

petitioner to a greater reduction for each of the years in question.

■ No one disputes that an arm's length sale of realty, recent in time, is "evidence of the 'highest rank' to determine the true value of the property at that time" *(Plaza Hotel Assoc. v Wellington Assoc.,* 37 NY2d 273, 277). Nor is there any dispute that the transactions in 1972 and 1976 were at arm's length. What is in dispute are the figures submitted by each of the parties in support of their respective contentions as to the actual price of the property in each instance.

Petitioner claims that the 1972 purchase price was $475,000 and the 1976 sales price $437,158. Respondent contends the 1972 purchase price was $752,654 and the 1976 sales price $805,658.

■ Whether the reductions awarded by the trial court are sufficient depends upon which of the conflicting conclusions of the parties as to the purchase price and sales price are correct. On the basis of the record before us, we agree with respondent.

At trial, petitioner produced an expert witness who testified to the property's value for the years in question. Respondent's position rested upon an audit of petitioner's closing statements of the 1972 purchase and 1976 sale and petitioner's books and records.

1972 Purchase: The contentions of the parties as to the purchase price are summarized as follows:

| Petitioner's Contention | Respondent's Contention |
|---|---|
| $ 75,000 cash | $ 75,000 cash |
| $400,000 purchase-money mortgage | $400,000 purchase-money mortgage |
| | $277,654 principal balance of existing first mortgage |
| $475,000 Total | $752,654 Total |

The difference between petitioner's total and respondent's total is $277,654.

Petitioner's expert conceded that at the time of the closing there was an existing first mortgage on the property in principal balance of $277,654, due and payable October 30, 1974. He maintained that this balance was not to be included in the computation of the purchase price, as the purchase-money mortgage was a "wrap-around" mortgage, encompass-

ing in its principal sum the said first mortgage balance.[1] He explained that the purchase-money mortgagee was required by the terms of the purchase-money mortgage to pay off the existing first mortgage when due out of the payments received by the purchase-money mortgagee from the owner of the property. Respondent, on the other hand, contended that the purchase-money mortgage was not a "wrap-around" mortgage, that therefore it did not subsume the existing first mortgage balance, and accordingly, that both the amount of the purchase-money mortgage and the existing first mortgage balance should be included in computing the purchase price.

The closing statement of the 1972 purchase, in referring to the existing first mortgage balance and the purchase-money second mortgage, nowhere indicated that the purchase-money mortgage was a "wrap-around" the first. Further, the closing statement of the 1976 sale refuted the expert's conclusion as to the price of the 1972 purchase. The closing statement of the 1976 transaction made known that the purchaser at that time took title subject to an existing first mortgage held by the same bank (The Dollar Savings Bank) which held the first mortgage at the 1972 purchase; that the first mortgage at the time of the 1976 sale was $252,158, almost the same amount as the balance on the first mortgage at the 1972 purchase; and that the assumption of this obligation was expressly made part of the price of the 1976 sale. The conclusion is warranted that the first mortgage on the property at the time of the 1972 purchase was not paid off by the 1972 purchase-money mortgagee when the first mortgage matured in October, 1974 and that it was still a lien on the property when the 1976 sale occurred.

Petitioner did not submit in evidence the so-called "wrap-around" mortgage or evidence of satisfaction of the first mortgage which it allegedly encompassed.

From the foregoing analysis, it appears that respondent's contention as to the 1972 purchase price is correct.

1976 Sale: The contention of the parties as to the sales price is summarized as follows:

---

1. A "wrap-around" mortgage has been defined as "[a] method of financing whereby a new mortgage to cover a new loan is placed in a secondary position to an existing mortgage in the original loan. The entire loan is treated as a single obligation" (Black's Law Dictionary, 5th ed; see *Matter of First Fiscal Fund Corp. v State Tax Comm.*, 49 AD2d 408, affd 40 NY2d 940).

For general discussion, see Galowitz, How to Use Wraparound Financing, 5 Real Estate LJ 107.

| Petitioner's Contention | Respondent's Contention | Respondent's Contention (as revised) |
| --- | --- | --- |
| $ 35,000 cash | $ 3,500 cash[2] | $ 35,000 cash |
| $252,158 principal balance of existing first mortgage | $252,158 principal balance of existing first mortgage | $252,158 principal balance of existing first mortgage |
| $150,000 purchase-money second mortgage | $150,000 purchase-money mortgage | $150,000 purchase-money mortgage |
| | $400,000 mortgage | $400,000 mortgage |
| $437,158 Total | $805,658 Total | $837,158 Total |

The difference between petitioner's total and respondent's total as revised is $400,000, a figure equivalent to the 1972 purchase-money mortgage. No evidence of satisfaction of that mortgage was submitted by petitioner and furthermore, petitioner's books as of December 31, 1975, one day before the closing, showed an entry indicating a $400,000 mortgage on the property.

Thus, it appears that there was a $400,000 mortgage not included by petitioner in its calculation of the sales price and hence, that respondent's contention as to the 1976 sales price is correct.

■ Special Term failed to make the findings required by law (Real Property Tax Law, § 720, subd 2). That failure compels this court to make the findings recited herein (*Matter of Elmhurst Towers v Tax Comm. of City of N. Y.*, 34 AD2d 570). We find that the value of the property for each of the assessment years at issue was not, as petitioner claims, less than the assessed value determined by the trial court (Real Property Tax Law, § 720, subd 2).

In view of these findings, it is not necessary to consider petitioner's argument, that capitalization may be employed as a means of valuing the subject property for assessment purposes. Even were we to consider this contention, we would agree with respondent that petitioner's supporting figures are incomplete and to some extent irrelevant, and therefore do not provide a sufficient or proper basis to support petitioner's contention.

On this record, petitioner has not established that the assessments at issue should be reduced any further. (*Matter of Union Carbide Corp. v Finance Administrator of City of N. Y.*, 70 AD2d 844; *Matter of Manufacturers Hanover Trust Co. v*

---

**2.** Examination of the 1976 closing statement discloses that the cash was not $3,500 but was $35,000, comprised of $3,500 deposit and $31,500 at closing.

*Tax Comm. of City of N. Y.,* 31 AD2d 606, affd 28 NY2d 514.) Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (BOWMAN, J.), entered June 16, 1978 should be affirmed, without costs.

KUPFERMAN, J. (concurring in the result). I accept the petitioner's contentions with respect to the 1972 and 1976 purchase prices. I believe the trial court gave effect thereto, and the assessed values found based thereon are reasonable. I would affirm.

FEIN, SANDLER and BLOOM, JJ., concur with BIRNS, J.; KUPFERMAN, J. P., concurs in opinion.

Judgment Supreme Court, New York County, entered on June 16, 1978, affirmed, without costs and without disbursements.