In the Matter of TRINITY PLACE COMPANY, Respondent, v FINANCE ADMINISTRATOR OF THE CITY OF NEW YORK et al., Appellants.

First Department, January 31, 1980

**APPEARANCES OF COUNSEL**

*Stanley Buchsbaum* of counsel *(Edith I. Spivack* with him

on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellants.

*Harry H. Chambers* of counsel *(John L. Diamond,* attorney), for respondent.

### OPINION OF THE COURT

SILVERMAN, J.

This is an appeal by the New York City taxing authorities from a judgment of the Special Term of the Supreme Court, after trial, reducing New York City real estate tax assessments on certain real property in the Borough of Manhattan for the years 1974-1975, 1975-1976, 1976-1977, 1977-1978. This property was the subject of an earlier litigation in *Matter of Trinity Place Co. v Finance Administrator of City of N. Y.* (38 NY2d 144).

In this case the original assessments range between $81,700,000 for the earliest year and $85,000,000 for the latest year involved. Special Term has reduced all the assessments to $80,200,000, for a total reduction for the four tax years of $12,200,000 in assessed valuation.

The Special Term Judge gave no reasons for his decision. He merely said, "After weighing and considering the evidence in this proceeding, the court finds the proper values to be as follows:." Subdivision 2 of section 720 of the Real Property Tax Law requires that the decision "shall contain the essential facts found upon which the ultimate finding of facts is made" (Cf. *Matter of 50 Overlook Assoc. v Finance Admin.,* 71 AD2d 131.) In the present case, the underlying facts are substantially undisputed; but the inferences of value to be drawn from those underlying facts and the methods by which the ultimate finding of value shall be arrived at are in dispute. And we have no clue as to the path by which the court arrived at its decision. Nevertheless, in the view we take in this case, we think we are able to decide the case without sending it back to Special Term for elucidation of the court's reasoning.

As we said in *Matter of General Motors Corp. v Finance Administrator of City of N. Y.* (70 AD2d 843): "There is a presumption of validity of the assessments by the taxing authorities. *(Matter of Peterson v Board of Assessors of Town of Westport,* 25 AD2d 797, 798.) Petitioner has the burden of showing by substantial evidence that the assessments were

excessive. *(Matter of Manufacturers Hanover Trust Co. v Tax Comm. of City of N. Y.,* 31 AD2d 606, affd 28 NY2d 514; *Matter of Clairdale Enterprises v Tax Comm. of City of N. Y.,* 33 AD2d 543; *Matter of Campagna v Tax Comm. of City of N. Y.,* 27 AD2d 832.)"

On the trial both sides relied primarily on capitalization of income to arrive at value. There was the usual battle of the experts, with the petitioner's expert coming to the predictable conclusion that the property was overassessed and the city's expert coming to the predictable conclusion that it was not. The experts disagreed as to whether certain payments—specifically tax escalation clause rental payments (see *Matter of Spatt v Finance Administrator,* 73 AD2d 918) and income from alterations made for tenants—should be included in income for this purpose. Petitioner's expert claimed that tax escalation clause income was too fluctuating to include. The city's expert included it. The city contends that petitioner's expert's exclusion of such income is inconsistent with his inclusion of the actual tax escalation in his capitalization rate. Each expert stated the capitalization rate that he used, again not surprisingly the city's expert using a rate more favorable to the city's contentions than the one used by petitioner's expert. Neither expert explained why the rate he used was the proper one rather than a rate a percentage point more or a percentage point less than what he used, though it is apparent that such a change would make an enormous difference in the valuation. In this case one percentage point difference in the capitalization rate would make a difference of about 10% in the ultimate valuation; in fact the experts were about six tenths of a point apart in the over-all basic capitalization rates they used (before petitioner's expert's adjustment for the tax rate).

However, we do have some additional objective facts which help support the city's valuation. The tax years here involved begin in 1974. (a) The building is a new building completed in 1972. The cost of construction of the building was approximately $87 million. As depreciated to December 31, 1976, this figure came close to $70 million. (There are minor disputes as to some of the figures making up these totals.) (b) The cost of the land to the predecessor owner United States Steel Corporation in 1964 was $27.7 million. In 1969 United States Steel Corporation sold the land to the present owner, United States Steel Carnegie Pension Fund, Inc., for $36 million. Whether or

not this was strictly an arm's length transaction, it seems unlikely that the property was transferred to the pension fund for an amount substantially different from what the parties believed the value to be. In an earlier decision affecting this same property, the Court of Appeals considered this sale price relevant in determining the value. (See *Matter of Trinity Place Co. v Finance Administrator of City of N. Y.*, 38 NY2d 144, 148, *supra.*) (c) In 1969, First National City Bank gave a building loan mortgage of $90 million on the property. In 1973, the Comptroller of the State of New York, as trustee of the Common Retirement Fund of the New York State Employees' Retirement System, replaced that mortgage with a $90 million mortgage expiring in 2003 at an interest rate of 7⅞%. These mortgages would seem to be substantially as cogent evidence of value as would arm's length sales during or about the tax years in question. For, like such sales, such mortgages represent an investment by willing businessmen of sums of money at about the tax period, in return for an interest in the property, based on their judgment that the property was worth at least such amounts. There is no suggestion that the mortgagees did not actually advance sums equal to the principal amounts of the mortgages. Recent sales of land, and cost of construction of a new and appropriate building are cogent evidence of value at least as to tax years close to the transactions involved. (Cf. *Matter of General Motors Corp. v Finance Administrator of City of N. Y.*, 70 AD2d 843, *supra.*) (d) Further, the city's expert supported his value by at least one claimed comparable sale.

What we said in *Matter of Manufacturers Hanover Trust Co. v Tax Comm. of City of N. Y.* (31 AD2d 606) is equally applicable here: "Petitioner has failed to demonstrate by substantial competent evidence that the property was overvalued. Consequently, the reductions have no adequate support in the record and the assessments should not have been reduced."

The judgment of the Supreme Court, New York County (BOWMAN, J.), entered November 10, 1978, reducing the tax assessments for the subject property for the years 1974-1975, 1975-1976, 1976-1977, 1977-1978, should be reversed, on the law and the facts, without costs, and the assessed valuations made by the respondents Finance Administrator and the Tax Commission of the City of New York should be reinstated.

MURPHY, P. J., BIRNS, MARKEWICH and LUPIANO, JJ., concur.

Judgment, Supreme Court, New York County, entered on November 10, 1978, unanimously reversed, on the law and the facts and vacated, without costs and without disbursements, and the assessed valuations made by the respondents Finance Administrator and the Tax Commission of the City of New York reinstated.