■ In the Matter of BRANCH MOTOR EXPRESS COMPANY (519-21 WEST 38TH STREET, 514-16 WEST 39TH STREET), Respondent, v TAX COMMISSION OF THE CITY OF NEW YORK, Appellant. — Judgment, Supreme Court, New York County, entered April 6, 1978, correcting and reducing the assessment for certain real property, is unanimously affirmed, without costs. Appellants, the City of New York tax authorities, appeal from the judgment in this tax certiorari proceeding to review certain assessments for the purpose of New York City real estate taxes. Special Term failed to make the findings of fact required by subdivision 2 of section 720 of the Real Property Tax Law. (see *50 Overlook Assoc. v Finance Admin. of City of N.Y.,* 72 AD2d 131; *Matter of Trinity Place Co. v Finance Administrator of City of N.Y.,* 72 AD2d 274.) We have on a number of occasions remanded the proceeding to the trial court for the purpose of making such findings. *(Matter of American Broadcasting Co. v Tax Comm. of City of N.Y.,* 78 AD2d 618; *Matter of Master Apts. [301 Riverside Drive] v Finance Administrator of City of N.Y.,* 78 AD2d 612; *Matter of Teamsters Local 237 Welfare Fund v Finance Administrator,* 79 AD2d 928.) However, in other cases where it appeared practical, we have ourselves made the findings. (See *50 Overlook Assoc. v Finance Admin. of City of N.Y., supra; Matter of Trinity Place Co. v Finance Administrator of City of N.Y., supra.)* The present appears to be a case where it is practical for us to make the findings as the facts are simple and essentially undisputed. The assessments involved are those for the seven tax years 1971/1972 to 1977/1978. For each year the Tax Commission assessed the property at $250,000, and for each year Special Term has reduced the assessment to $180,000. The property involved is a one-story trucking terminal in the Borough of Manhattan between 10th and 11th Avenues, fronts on both 38th (65 feet, 7 inches) and 39th (78 feet, 4 inches) Streets and has an area of approximately 14,308 sq. ft. Petitioner is net lessee of the property under a 21-year net lease executed by petitioner's predecessor in interest in 1958. The net rent specified in the lease was $22,000 per annum for the first 10 years and $24,900 per annum for the last 11 years, which include the taxable years here involved. However, at least since 1965, the property has been occupied by a sublessee, R & B Terminal Company, under an oral sublease. The rent under the sublease was $24,900 per annum for 1970 through 1973, and $30,900 per annum for 1974 through 1976, but this rent was a gross rent and not a net. The "net income" to the prime lessee from the sublease, after real estate taxes but before rent to the fee owner, varied from a low of $6,136 to a high of $11,082. Before real estate taxes the operating income from the sublease varied between a low of $22,345 and a high of $28,888 per annum. Of course all these figures represented a net loss to petitioner-lessee as it had to pay the real estate taxes and also net rentals to the fee owner of $24,900 per annum. The petitioner's expert considered a fair capitalization rate of net income after real estate taxes to be 10¼%; and if net income were calculated before real estate taxes, then he added an average tax rate of 7½% making a capitalization rate applicable to net income before real estate taxes of 17¾%. No one contended for different capitalization rates. If the fair rental value of the property is the rent payable to the fee owner fixed in the prime lease without any expenses, then capitalization at 10¼% yields a valuation of $242,927 or very close to

the assessment of $250,000. If, however, net income after expenses, based on the sublease rentals payable to the prime lessee is taken as the fair rental value so that the net income to the prime lessee is deemed the net income generated by the property, then capitalization at 10¼% of net income after real estate taxes yields a valuation of between $59,863 and $108,117; and capitalization of operating income before real estate taxes at 17¾% yields a valuation of between $125,887 and $162,749. Although the petitioner prime lessee and the sublessee did other business with each other on a continuing basis, there is no persuasive evidence that the sublease rental did not represent an arm's length transaction. As the sublease rental was currently revised, we think it is a more reliable indicator of fair rental value than the rent fixed in a long-term lease executed in 1958. No comparative rental value evidence was presented to show that the rent fixed in the sublease was not a fair measure of the rental value of the property. Certiorari proceedings for the years immediately preceding the tax years here in question had resulted in corrections of the assessed valuations to $180,000. The "value of property for taxation as adjudicated in one year may be evidence of its assessable value for a succeeding year." *(Matter of Woolworth Co. v Tax Comm. of City of N.Y.,* 20 NY2d 561, 567; accord *People ex rel. Hilton v Fahrenkopf,* 279 NY 49, 52.) To be sure, this evidence lacks something in persuasiveness as the prior decisions by two different Judges had fixed the same valuations for each year from 1964/1965 to 1970/1971, and it seems questionable that there have been no changes up or down in the valuation of the property between 1964 and 1976. But this record contains no evidence of such changes. In the absence of any contrary evidence in the record, we find that the fair market value and the assessable value of the property for the tax years here involved did not exceed $180,000. Concur — Birns, J.P., Sandler, Silverman and Fein, JJ.