■ MAX FARASH, as Agent for HVM ASSOCIATES II, Respondent, v JAMES E. SMITH, as Assessor of the Town of Perinton, Appellant, and FAIRPORT CENTRAL SCHOOL DISTRICT, Intervenor-Respondent-Appellant. (And Seven Other Actions.) — Order unanimously modified, and, as modified, affirmed, without costs, in accordance with the following memorandum: These are consolidated tax certiorari proceedings for eight separate apartment complexes. After a hearing the Referee found overvaluations of all the complexes for all years in question. Respondent town and intervenor-respondent school district appeal from the order which confirmed the Referee's report in all respects. That part of the order reducing the assessment of the complex known as Highview Manor for the year 1973 and those parts of the order which reduced the assessments for the apartment complexes known as Jefferson Manor and Villagewood Manor I and II are reversed and remitted for a new hearing. While the Referee correctly used cost of construction in finding value, respondents have sufficiently demonstrated that petitioners' appraiser may have grossly understated the cost of construction and we are unable on this record to compute such costs. While it is well established that petitioners have the burden of showing that assessments are erroneous *(Matter of Barker's Stores v Board of Review of City of Auburn,* 74 AD2d 994), we nevertheless remit because respondents' appraiser acknowledges that these apartment complexes were overvalued. Those parts of the order reducing the assessments for the complexes known as Highview Manor Section I for the years 1974, 1975 and 1976, and Highview Manor Section II for the years 1975 and 1976 are reversed and the assessments reinstated. The Referee erred in failing to give weight to two transactions which bear heavily on the values of these relatively new complexes. Highview Manor Section II was conveyed by the owner, Max Farash, to a partnership in which Farash was the owner of a 50% interest. The remaining partners contributed $450,000 for their 50% interest and the conveyance was made subject to a mortgage of $2,100,000. The mortgage alone far exceeded the full value indicated by the assessment. The only asset acquired by the partnership was Highview Manor Section II, and there is no evidence that the partnership engaged in any business other than the ownership and operation of this complex. In short, by their contribution of cash, the partners acquired an interest in the apartments. We thus reject petitioners' argument that the transaction should be viewed solely as a contribution to a partnership. It has all the indicia of a sale, is clearly more relevant to value than a mortgage (cf. *Matter of Trinity Place Co. v Finance Administrator of City of N. Y.,* 72 AD2d 274, affd 51 NY2d 890) and should receive the greatest weight *(Plaza Hotel Assoc. v Wellington Assoc.,* 37 NY2d 273). Highview Manor Section I was also transferred by Farash in manner identical to the transfer of Highview Manor Section II, except that the conveyance to the partnership was subject to a mortgage of $2,400,000. Here also the mortgage alone greatly exceeded the full value indicated by the assessment. In asking that we reject the transfers of Highview Manor Sections I and II, petitioners correctly note that neither transaction was used in either appraisal. The argument based thereon is rejected, however, because petitioners failed to object to their admission into evidence on that ground. While we have thus adopted respondents' assertion that the above transactions were the best evidence of value for Highview Manor Sections I and II, we reject their claim that they should be viewed as comparable sales for the remaining apartment complexes. The transactions were not offered for that purpose and no attempt was made to adjust them to the other remaining properties. Those parts of the order reducing the assessments for the complexes known as Perinton Manor, Oakwood Manor and Knollwood Manor are affirmed. The Referee adopted the economic method to determine value, as did both appraisers. Respondents argue, however, that

since these apartment projects were completed in 1970, the construction mortgages which were placed upon them, as well as the cost of land and of construction, should be considered. While this approach would not be without basis (see *Matter of Trinity Place Co. v Finance Administrator of City of N. Y., supra)*, it appears that these properties were fully operational in 1972 and that the economic approach to valuation was the better method for 1972 and succeeding years. That was clearly the opinion of both appraisers and we will not, as respondents suggest, reject the appraisal of petitioners' expert. Moreover, if, as petitioners argue, the mortgage amounts exceeded the combined cost of land and construction, the mortgages would not be indicative of market value. Although we would agree that the combined cost of land and construction would be indicative of market value, that approach was rejected by respondents' appraiser on the basis of economic obsolescence in the northeastern United States. Respondents correctly argue that where the validity of an assessment is in dispute real estate taxes should not be taken as an expense, but should be capitalized *(Matter of Roosevelt Nassau Operating Corp. v Board of Assessors of County of Nassau*, 68 Misc 2d 183, affd 41 AD2d 647). Since both appraisers took real estate taxes as an expense, however, and respondents failed to offer evidence of an effective tax rate, the record will not permit computation of real estate taxes as a capitalization factor. The capitalization rate adopted by the Referee was based upon the band of investment theory, employing prevailing interest rates for a 75% mortgage investment. Respondents argue that because the complexes here were mortgaged to or above 100% of value, the band of investment theory has no application; and further, that the interest rate should be that of the existing mortgage, rather than a prevailing rate. We disagree. The goal is to determine what price willing buyers would pay willing sellers for these properties during the years in question and the band of investment theory is the most suitable method of determining such prices. We find no merit in respondents' argument that reserves for replacement of short-life items were improperly calculated. We also reject respondents' argument that a fixed per centum vacancy loss should, have been used to calculate net income. Where, as here, petitioners' expert, in calculating net income, used actual rents received, it would have been inappropriate to deduct a per centum vacancy loss (see *Matter of Barker's Stores v Board of Review of City of Auburn, supra)*. Whatever value a fixed per centum vacancy loss may have for reaching stabilized income, it would be of little purpose here since the vacancies in the Knollwood Manor and Oakwood Manor complexes were very low and the vacancies in the Perinton Manor complex were fire related. In affirming those parts of the order reducing the assessments on the Perinton Manor, Oakwood Manor and Knollwood Manor properties, we recognize that in most instances the reduction results in assessments lower than the amounts sought in the petitions. While the propriety of such result is no longer open to question (see *W. T. Grant Co. v Srogi,* 52 NY2d 496), intervenor-respondent claims prejudice on the basis that it did not participate in the hearing and intervened only for purposes of appeal. Intervenor does not assert, however, that it was unfamiliar with the appraisals when it chose not to appear, and its claim of prejudice can be no greater than that of the respondent town. (Appeals from order of Monroe Supreme Court, Fritsch, J. — Real Property Tax Law, art 7.) Present — Dillon, P.J., Cardamone, Doerr, Denman and Moule, JJ.