OPINION OF THE COURT
Beverly S. Cohen, J.
The plaintiffs move for an order pursuant to CPLR 3212 granting partial summary judgment on the first, second, third and fourth causes of action.
The plaintiffs allegedly hold 20% of the stock of 520 West 50th St., Inc., a cooperative housing company (the Company). Plaintiff Landsman is president and a shareholder; plaintiffs Feinstein, Woolley and Oviedo are officers, directors and shareholders, and plaintiffs Scarantino, Dolgen, Joseph and Sydow are shareholders of the Company.
The defendant S & I Associates is the sponsor and managing agent. The defendant Midtown Associates is the holder of the wraparound mortgage on the property. The individual defendants Stuart and Ira Chassen are the partners in both S & I Associates and Midtown Associates. The Chassens are also directors and officers of the Company. The defendants, Brady, Kushner and Pollack, are shareholders allegedly aligned with the Chassens. The defendant, Weinstein, is the attorney for the sponsor and an officer of the Company. The defendant, DePompeis, is an employee of S & I Associates and the registered agent of the Company’s building. These "sponsor defendants” allegedly have control of the Company through its Board of Directors.
Plaintiffs are moving for summary judgment on their first four causes of action which seek declaratory, accounting and injunctive relief, and to recover damages for breach of fiduciary duties, based upon the allegations that there was no consideration for the wraparound mortgage (first cause of action); the Company is delinquent in its obligations under the first mortgage (second cause of action); the defendants breached their fiduciary duty to the Company by voting against assigning the wraparound mortgage back to the Company (third cause of action); and the defendants Stuart Chassen, Ira Chassen, DePompeis and Weinstein depleted the Company’s reserve fund (fourth cause of action).
On June 16, 1988, the Company executed, as mortgagor, two mortgages encumbering the cooperative property. The underlying mortgage in favor of East New York Savings Bank *232 (Bank) for $1.5 million is a consolidation of prior mortgages on the property held by the Bank and has a maturity date of July 1, 1993. The wraparound mortgage is in favor of Midtown Associates/S & I Associates also for the principal sum of $1.5 million, but reserving higher interest rate payments.* The sponsor/mortgagee therein assumed the Company’s obligation to pay the principal and interest due to the Bank under the underlying mortgage, and provided (para 37) that, "[i]f, through no fault of the mortgagor any amounts due under any underlying mortgage prior to the due date of the wraparound mortgage shall not be paid by the holder of the wraparound mortgage, the then holder of the wraparound mortgage will assign the entire wraparound mortgage of $1,500,000 to the mortgagor”.
The movants seek to invalidate the wraparound mortgage on two grounds. First, plaintiffs allege that no consideration was given by the mortgagor, as the subject indebtedness was the same $1.5 million which the Company had itself borrowed from the Bank; the only purpose of the wraparound mortgage being to reserve a higher interest rate as profit to the sponsor. Secondly, plaintiffs rely on a default by the sponsor-controlled Company on the Bank’s underlying mortgage as a basis for invalidating the wraparound mortgage.
A wraparound mortgage has been defined as a " 'method of financing whereby a new mortgage to cover a new loan is placed in a secondary position to an existing mortgage in the original loan. The entire loan is treated as a single obligation’ (Black’s Law Dictionary, 5th ed; see Matter of First of Fiscal Fund Corp. v State Tax Comm., 49 AD2d 408, affd 40 NY2d 940)” (Matter of 50 Overlook Assocs. v Finance Admin., 72 AD2d 131, 134, n 1). Wraparound mortgages often constitute part of the consideration along with the cash payment payable at the closing in cooperative conversions. The sponsor usually provides for a profit income based upon a differential between the interest rate reserved by the wraparound mortgage and the rate in the underlying mortgages. The Attorney-General’s regulations governing cooperative conversions contain a provision that the wraparound mortgagee will lose his equity in the wraparound mortgage if he defaults on his obligations to *233 make payment on the underlying mortgage (13 NYCRR 18.3 [s] [10] [ii]).
Initially, the court rejects movants’ argument which relies on the tax declaration that no further indebtedness was created by the wraparound mortgage as evidence of a lack of consideration and a basis for invalidating the wraparound mortgage. The mere substitution of one mortgage for another which creates no additional indebtedness does not create a new mortgage requiring the payment of a recording tax (see, Matter of Bay View Towers Apts. v State Tax Commn., 40 NY2d 856, 857), as long as the amount secured remains the same (see, Matter of City of New York v State Tax Commn., 130 AD2d 890). Thus, a mortgage that has no taxable consideration may nonetheless be a valid mortgage if other consideration exists.
The defendants argue that the consideration for the mortgage is the property itself transferred to the Company on conversion. The defendants submit the offering plan which states that, at the closing of the title, the Company "will execute and deliver to the sponsor a wraparound mortgage subordinate to the underlying mortgages so that the total mortgage indebtedness upon the property will be $1,500,000”. It further provides that the wraparound mortgage will require equal monthly payments of $13,125 each, constituting interest of 10.5% per annum for five years when the entire principal of $1,500,000 will be due. The defendants also provide a copy conveyance, dated June 15, transferring property from another entity to the Company. As the wraparound mortgage is part of the larger transaction of conversion, it does not require separate consideration. The cases cited by movants, none of which involves cooperative conversions, are not controlling here. There is no authority offered to the court to show that this type of transaction, in the context of a conversion, is illegal or invalid. Accordingly, plaintiffs have not established a right to summary judgment on the first cause of action.
The arrangement by the sponsor to create such a profit beyond the conversion date is not uncommon. What is confusing in this case is that it was the Company which became indebted to the Bank under the underlying mortgage when all mortgages were consolidated and it is the Company which is also indebted to the sponsor for same $1.5 million under the wraparound mortgage. The sponsor, however, assumed the Company’s obligations on the underlying mortgage, and the Company is in no worse position than it would be if the *234 sponsor were the underlying mortgagor. It appears that the Attorney-General’s provisions offer the same protection here where the Company is also the underlying mortgagor. By submitting copies of the mortgage and evidence that the underlying mortgage is in default, plaintiffs have made a prima facie showing of entitlement to discharge of the wraparound mortgage (see, 51 Fifth Ave. Owners Corp. v Coronet Props. Co., NYLJ, June 10, 1992, at 23, col 2).
In opposition, defendants make only unsubstantiated allegations of wrongdoing against plaintiff Landsman, to suggest that the default on the underlying mortgage is due to the fault of the Company (see, Wraparound Mortgage Rider, para 37, supra).
The financial problems of the Company arose before plaintiffs became officers, and appear to be due to the fact that the "sponsor defendants” continue to be in control of the Company’s Board, despite the claim that the sponsor ceased to control the Company in 1989. The allegations of self-dealing and violations of fiduciary duty appear to be well founded. For example, defendants do not dispute that seven rent-stabilized cooperative apartments were transferred by the sponsor to aspiring actor defendant, Christopher Brady, who defaulted on the maintenance payments. Moreover, while Brady was in default, "sponsor defendants” forwarded him the rent collected from the rent-stabilized tenants, thus depriving the Company of funds to which it was entitled. Thus, the actions of the defendants cannot be used to attribute fault to the Company in order to sustain the sponsor’s wraparound mortgage.
As plaintiffs only became officers of the Company in March 1992, at a time when the underlying Bank mortgage was already in default, plaintiffs are entitled to the relief sought on behalf of the Company in their second cause of action, invalidating the wraparound mortgage.
Plaintiffs, on behalf of the Company, are entitled to partial summary judgment on the issue of liability on the third cause of action for breach of fiduciary duty based upon defendant directors’ (the Chassens, Pollack and Kushner) failure to disavow the wraparound mortgage. As directors on the Company’s Board, they owe a duty of loyalty to the Company, rather than the sponsor.
Defendants offer evidence that the reserve fund was established, but do not deny that it has since been depleted. As no *235 evidence is offered as to how the fund was expended, plaintiffs are entitled to an accounting setting forth how the fund has been expended since its creation in June 1988, as requested in the fourth cause of action. The defendants, S & I Associates and the Chassens, are directed to account to plaintiffs on behalf of the Company (since August 16, 1989) and on behalf of the sponsor (since June 1988) for all deposits into and withdrawals from the reserve fund with details of all expenditures, within 30 days from service of a copy of the order to be settled herein.

 On the face of the mortgage, the mortgagee is stated to be Midtown Associates, but the heading to the Rider refers to S & I Associates as mortgagee. Both corporations are controlled by the Chassen defendants, and these defendants state that Midtown is only the nominal holder of the mortgage for the sponsor.