■ Peter F. Cohalan, as Supervisor of the Town of Islip, et al., Appellants, v George E. Lechtrecker et al., as Executor of John Archambault, Deceased, et al., Respondents. — In an action, *inter alia,* to permanently enjoin the defendants from using certain real property for the outdoor storage of school buses and other vehicles, plaintiffs appeal from a judgment of the Supreme Court, Suffolk County (Geiler, J.), dated January 24, 1980, which, after a nonjury trial, dismissed the complaint. Judgment modified, on the law and the facts, by adding thereto, after the provision dismissing the complaint, the following: "except that defendants are permanently enjoined from using the subject property for the outdoor storage of buses, garbage trucks, or street sweepers, and from permitting such uses". As so modified, judgment affirmed, with costs to the plaintiffs. The subject property is an L-shaped, 1.7-acre parcel located on the south side of Hauppauge Town Line Road in Islip, Suffolk County. Charles B. Simonson, defendants' predecessor in interest, took possession of the property in 1926. Beginning in 1940, Simonson operated school buses for the Hauppauge School District and stored them on the premises. In 1949 Simonson built a five-bay bus garage. In 1959, in order to accommodate increasing numbers of schoolchildren, Simonson needed to buy three additional buses. At that time, the school district required that a school bus contractor house all buses used in school transportation. Simonson thus determined that he would have to build a second garage similar in capacity to the first. As the existing use did not conform to the zoning classification covering the property, Simonson applied for a change from "Residential AA" Use District to a "Business 3" Use District. On April 9, 1959 the town board held a public hearing in connection with Simonson's application. At the hearing, Simonson's attorney detailed the history of Simonson's use of the property and explained that the need for an additional garage arose out of the planned purchase of three new buses and the district requirement that all ·school buses be garaged. A February 20, 1959 letter from the board of education of the district was read. It certified that the district required that all school buses be garaged and stated that Simonson had complied with this requirement since becoming the district's bus contractor in 1940. The letter also indicated that additional buses would be needed in the following school year and that these buses would have to be housed. On June 2, 1959 the town board resolved to grant Simonson's application subject to his compliance with several conditions, including the following: "[u]se of property to be limited to the present use (namely garage for school buses and similar commercial vehicles)." On June 29, 1959 Simonson executed a "Declaration of Covenants and Restrictions" which, *inter alia,* recited the above restriction *in haec verba.* The declaration was recorded on October 1, 1959. The proposed garage was never built. By 1962, 6 of 13 buses were stored outdoors. In 1972 the property, the bus contract, and 37 buses were purchased by John Archambault. At that time, 30 or more buses were stored outdoors. In 1975 the owner of an adjoining parcel complained to the town that the lack of proper drainage on the subject

property caused periodic flooding to his own premises. Fifty-one buses were then being stored on the property. During that same year, Archambault died and the property passed into the control of the defendants. In 1977 the town received a further complaint. The instant action was commenced by service of a summons and complaint both dated December 6, 1978. The complaint charged, *inter alia,* that the use of the property for the outdoor storage of buses and other vehicles violated the declaration of covenants and restrictions. In their answer, the defendants admitted the outdoor storage of buses on their property. At trial, the parties stipulated that outdoor storage would be permitted on the subject premises but for the alleged application of the declaration. Trial Term then received evidence which established the above facts. In addition, the attorney who represented Simonson when the latter applied for a zoning change in 1959 testified that at the time of the application, all of Simonson's 8 to 10 buses were garaged. However, there was also testimony that in the fall of 1959, at least one school bus was stored outdoors, and that Simonson did not have enough garage space to house 8 to 10 buses. In dismissing the complaint, Trial Term determined that "[t]he credible evidence in the record indicates that between one to five buses were stored outside at the time the change of zone application was granted," that it "would have to give a 'strained' interpretation to the phrase 'present use' in order to hold that outdoor storage of buses was prohibited by" the declaration, and that "outdoor storage of buses was contemplated by the parties in 1959". The Court of Appeals has recently expressed its continued adherence to the view that a municipality may rezone property conditioned on the execution of a private declaration of covenants restricting the use to which the parcel sought to be rezoned may be put *(Collard v Incorporated Vil. of Flower Hill,* 52 NY2d 594). In *Collard,* the declaration at issue provided that the appellants could not erect any structure on their property without the prior consent of the municipality. Appellants argued that the declaration should be construed to include a provision that such consent could not be unreasonably withheld. The Court of Appeals (p 603) declined to do so on the ground that "[t]he terminology employed in the declaration is explicit." In the instant matter, the defendants argue that the 1959 declaration of covenants and restrictions does not prohibit the outdoor storage of school buses on their property. In our view, however, the language restricting the use of the property to "the present use (namely garage for school buses and similar commercial vehicles)" admits of but one interpretation: that all school buses and other vehicles stored on the property must be garaged. We reject defendants' contention that the word "garage" as used in the declaration comprehends outdoor storage. Defendants' predecessor in interest Charles Simonson sought a zoning change for the express reason that he was obliged to construct a garage to house his buses. Given this context, "garage" must be accorded its customary meaning. In its decision, Trial Term focused on whether Simonson actually stored buses outdoors at the time of the zoning application. At most, this factual issue has indirect relevance to a determination of the parties' intent in employing the language that was used in the declaration. In his 1959 application for a zoning change, Simonson did not represent to the town board that he used the property to store buses outdoors or that he intended to so use the property. Instead, his presentation to the board centered on his need to construct a garage to house additional buses. Consequently, there is no basis upon which to conclude that the words "present use" imply an intent at odds with the meaning of the phrase which follows. Defendants also argue that the defenses of laches and estoppel should operate to bar the plaintiffs from the relief they seek. We do not here find occasion to invoke the doctrine of laches against the plaintiffs (see, generally, 2 Anderson, New York Zoning Law and Practice [2d ed], § 23.08; 17 McQuillin, Municipal

Corporations [3d ed], § 49.09). In seeking to enforce the declaration, the plaintiffs act on behalf of those whose properties are benefited by the restriction (cf. *Church v Town of Islip,* 8 NY2d 254, 259). Thus, it cannot be argued that the plaintiffs sue in their proprietary, as opposed to governmental, capacity, with the implication that a court should more readily invoke laches (see 17 McQuillin, Municipal Corporations [3d ed], § 49.09). Moreover, the plaintiffs instituted the instant suit within a reasonable period after receiving complaints from owners of neighboring properties. The town could not normally be expected to sue in the absence of indications from its citizenry that a suit would serve a meaningful purpose. Nor do we find that the doctrine of estoppel bars the plaintiffs from their injunctive relief (see *Matter of Rosbar Co. v Board of Appeals of City of Long Beach,* 77 AD2d 568, affd 53 NY2d 623). The recorded declaration manifested to all prospective buyers the restriction which limited the use of the property. Finally, we note that we have considered the other arguments advanced by the parties and reject them as without merit. Hopkins, J. P., Damiani, Titone and Mangano, JJ., concur.