[662 NYS2d 286]

CITY OF NEW YORK, Appellant-Respondent, v DELAFIELD 246
CORPORATION, Respondent-Appellant, et al., Defendants.

First Department, July 24, 1997

12

14

APPEARANCES OF COUNSEL

*Cheryl Payer* of counsel *(Stephen J. McGrath* and *John Low-Beer* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for appellant-respondent.

*David Jaroslawicz* of counsel *(Robert J. Tolchin* on the brief; *Jaroslawicz & Jaros,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

MAZZARELLI, J.

The City of New York (City) commenced this action to compel the owner of real property known as the Delafield Estate, in Riverdale, New York, to comply with certain covenants agreed to by the original grantor, Columbia University, and the initial grantee-developer Delafield Estates Limited (Delafield Limited). The primary issue on this appeal is whether these covenants are binding on defendant Delafield 246 Corporation (Delafield 246), a successor owner of the property.

Edward Delafield gave the 10.5-acre estate, including the Delafield Mansion, to Columbia University in 1966. In 1980, the Trustees of Columbia University entered into a contract to sell the property to Delafield Limited, and the parties executed and recorded a Declaration (Declaration) governing the development of the property. The Declaration was executed in consideration of the City Planning Commission's (CPC) and the Board of Estimate's approval of permits authorizing Delafield Limited to construct a 33-unit residential development on the estate property.

The Declaration required that Delafield Limited develop the property in accordance with the Site and Construction Management Plans. It also included specific covenants requiring Delafield Limited to preserve and protect the Delafield Mansion, retain the existing trees on the property and restore any trees damaged by construction, and regrade and landscape the surface terrain disturbed by the construction of an underground garage. The Declaration further required completion of individual components of the construction by certain dates. In the event these components were not completed within the deadlines, the Declaration authorized CPC to either direct completion within 30 days, or to direct removal of the incomplete component and restoration of the disturbed land within 180 days.

A resolution adopted by CPC and approved by the Board of Estimate in September 1980 provided that the construction

permits were expressly conditioned on compliance with the covenants in the Declaration. The City was specifically given standing, as a third-party beneficiary, to enforce the Declaration, but it had no right of action unless the Department of Buildings first issued a violation for noncompliance with the conditions or obligations of the Declaration. The Declaration also stated that the covenants and restrictions listed therein "shall run with such real property" and be binding on any party having an interest in the property, and their successors and assigns.

In October 1981, the City and Delafield Limited entered into an agreement (Agreement), in which the City demapped a portion of the area and accepted a sewer easement, while Delafield Limited agreed to improve certain streets, install sewers, hydrants, sprinkler systems and fire alarm systems. Like the Declaration, the Agreement was approved by CPC and the Board of Estimate, was recorded and recited that it would run with the land and bind all successors and assigns. Both the Agreement and the Declaration required the posting of performance bonds pertaining to specific covenants or obligations. Delafield Limited purchased these bonds from defendant sureties American Home Assurance Company and National Union Fire Insurance Company of Pittsburgh, Pa.

In 1986, after building only five units, Delafield Limited encountered financial difficulties and sold the property to Delafield Estates Associates (Delafield Associates). Delafield Associates built only six more units, and sold 9 of the existing 11 units. It also became financially troubled and a court-appointed receiver took control of the property in 1989. Because the property was heavily encumbered with a $9 million mortgage and other debt, the receiver recommended a public auction. At or about the same time, the mortgagees commenced a foreclosure action.

Meanwhile, according to the City, the condition of the property deteriorated because of the unfinished construction. There were several open foundation pits, an open excavation pit for the never-completed underground garage and numerous destroyed trees. Moreover, the mansion was left in poor condition. On November 3, 1988, the City Environmental Control Board issued notices of violation for failure to build fences around open foundations and excavations. In February 1989, the City notified the receiver of its obligation to cure.

In July 1989, the City commenced this action in Supreme Court, New York County, to enforce Delafield Associates' and

the sureties' obligations under the Declaration and Agreement. In its verified complaint, the City demanded that Delafield Associates, as successor to Delafield Limited, replace the destroyed trees and protect the existing ones, restore the landscape around the unbuilt garage, restore the mansion, complete the unbuilt units and install the fire alarm system. The complaint included separate causes of action against the sureties relating to each of these covenants, demanding compliance or recovery on the bonds.

After issue was joined, the City moved for partial summary judgment against the sureties, seeking specific performance of the restoration work. By order entered June 7, 1991, the Supreme Court ruled that Delafield Limited had not fulfilled its obligations under the Declaration and the Agreement, thereby triggering liability of the performance bonds. It held the specific performance request in abeyance pending a hearing before a Referee on the cost of the work required to comply with the Declaration and the Agreement. This hearing was not pursued by the City.

In August 1991, the property was sold at foreclosure to Abraham Zion (Zion) for $1 million. According to the City, because of the recording of the Declaration and Agreement with the County Clerk, Zion had constructive notice of the covenants. The City further claims Zion was given actual notice of the covenants at the auction. Immediately after the foreclosure sale, Zion conveyed the property to his own corporation, defendant Delafield 246 Corporation (Delafield 246), which was then substituted as a defendant in this action in place of Delafield Associates. Delafield 246 served its answer in January 1992, including the affirmative defense that it was not bound by the Declaration or the Agreement because the affirmative covenants in them did not touch and concern the land, and because Delafield 246 was not in privity with the original signatories to those documents.

Between January 1992 and November 1993, the City and Delafield 246 attempted to negotiate a resolution of the dispute. In July 1992, Delafield 246's attorney sent letters to the Land Use Committee of Community Board 8 and the City's attorney, stating that Delafield 246 intended to complete the development of the property in compliance with the Declaration and the Agreement, with only minor modifications. He further stated that Delafield 246 would cure any existing violations on the property, and stated its approval of a $150,000 settlement being negotiated with the sureties. Zion hired an architect to

draw up restoration plans, and said plans were submitted to the City Planning Department. The plans were rejected, however, because they did not adequately address the topographical work, uncompleted buildings and open foundation pits.

The negotiations between the parties broke down, and in November 1993 the City moved for summary judgment[1] requesting that the court issue an order directing Delafield 246 to submit acceptable restoration plans to the Departments of City Planning and Buildings by a date certain, to complete the work within $2^{1}/_{2}$ months of the plans' approval date and to refrain from doing any work on the property unless a permit was obtained. In support of the motion, the City offered the affidavit of the president of the Delafield Estates Homeowners' Association, who was a resident of one of the nine completed units. He attested to numerous violations of the Declaration and the Agreement, including the improper filling of foundation pits, the destruction of trees during heavy construction work, the failure to install the fire alarm system and Delafield 246's refusal to proceed with the construction work or pay maintenance to the Homeowners' Association.

Meanwhile, in October 1994, the City settled with the sureties for $150,000 and discontinued the action against them. Delafield 246 was not a party to the settlement, but, as noted, its counsel stated his approval of the settlement terms.

The IAS Court held a hearing in October 1994. The court and Delafield 246 stated that the parties had stipulated to hold the hearing for the City to explain the specific restoration work it required, and the inadequacies of Delafield 246's previously submitted plans. The City, however, maintained that its participation in the hearing did not constitute a withdrawal of its motion for summary judgment, in which it requested that Delafield 246 submit acceptable restoration plans to CPC. The attorney for the City stated that he was agreeing to the hearing *not* to permit the court to make a definitive ruling on the plans, which he asserted would usurp the role of the CPC, but merely to aid the court in determining its summary judgment motion. The IAS Court suggested that after the hearing it would accept proposed findings of fact from both sides, and then issue an order giving Delafield 246 "parameters" for the

---

1. The motion was not heard at this time because of an intervening motion by counsel for Delafield 246 to be relieved. The motion was renoticed in July 1994, and was heard at that time.

required restoration work, which could then be submitted to CPC for approval.

The City called two witnesses at the hearing, both employees of the City Planning Department. One testified regarding the application process for site-alteration permits, and the other explained that Delafield 246's prior restoration plans were too inadequate to even submit to CPC. Delafield 246 made a settlement offer while the hearing was pending, including a provision stating that it was not bound by the restrictive covenants. The offer was subsequently withdrawn.

This hearing was never completed. Instead, in November 1994, Delafield 246 filed papers in opposition to the City's motion for summary judgment, and cross-moved to dismiss the complaint. In the alternative, it moved for another hearing to determine what restoration work it was required to do. Delafield 246 again asserted it was not bound by the Declaration and the Agreement, and was not responsible for the prior owners' breaches. Delafield 246 also claimed to have cured the prior violations by installing fences and filling the foundation pits. In its reply papers, Delafield 246 raised three new arguments: that the Declaration and the Agreement were void as against public policy; that the City's concession before a different court in 1991 that it could not recover in excess of the face amounts of the bonds was the law of the case; and that the $150,000 settlement with the sureties was ineffectual because Delafield 246, a third-party beneficiary of the surety contract, was improperly excluded from the settlement negotiations.

During the pendency of the motion, the Delafield Mansion was completely destroyed by fire.

In an order entered April 18, 1996, the IAS Court dismissed all of the City's causes of action except those for tree restoration (first and second). On those claims, it granted summary judgment to the extent of directing a hearing before a Special Referee to hear and report on the scope, cost and specifics of the work to restore the trees in accordance with the Declaration. The IAS Court explained that the covenants in the Declaration and the Agreement were affirmative covenants which generally did not run with the land, and would only do so if they "touched and concerned" the land to a substantial degree. The court concluded that because the covenants to install a fire alarm system and to build an underground garage were required to be completed within a finite period, and were the subject of specific performance bonds, they resembled personal, contractual promises rather than covenants that ran with the

land. Accordingly, it found those covenants not binding on Delafield 246, and dismissed those causes of action.

The IAS Court also dismissed as academic the causes of action pertaining to restoration of the mansion, and the completion or restoration of the areas where dwelling units had not been completed. It found that the covenant to preserve the mansion was a nullity since the mansion no longer existed, and that it was the "court's understanding" that the dwelling unit areas had been filled and that any improprieties could be remedied administratively. The court also dismissed Delafield 246's cross claims against the sureties, finding their liability extinguished by the settlement.

The IAS Court, however, found that the covenants relating to tree retention and restoration did touch and concern the land, and therefore ran with the land to bind successor owners such as Delafield 246. Nonetheless, the court explained that since the tree restoration requirements had been the subject of a $75,000 performance bond, the money from the settlement should be applied to pay for restoration work, not to exceed $75,000, and Delafield 246 would have to bear the remainder of the cost.[2]

The City makes three main arguments on appeal. First, it asserts that the court improperly usurped the function of CPC by addressing the merits of Delafield 246's restoration obligations, rather than directing Delafield 246 to submit plans to that agency, which it argues has exclusive jurisdiction over zoning matters. Second, the City contends that in enforcing the covenants in the Declaration and the Agreement, it is merely exercising its zoning power since those covenants, given in exchange for special permits to develop the property, became part of the zoning law which binds all successor owners. Third, it argues that the covenants at issue clearly touch and concern the land, and therefore bind Delafield 246.

Initially, both parties raise preservation-type arguments. Delafield 246 asserts that the City's complaint should be dismissed because the relief requested by the City on this appeal was *never* requested in its complaint. The complaint sought specific performance of the restoration work, or payment on the performance bonds, pursuant to the terms of the Declaration and the Agreement. Delafield 246 is correct that

---

2. Additionally, in finding that several of the covenants were not binding on Delafield 246, the IAS Court relied on the fact that CPC could simply revoke the special permits. While both parties acknowledge that CPC is authorized to do that, neither argues for this course of action.

the City's complaint does not request anyone to submit plans to any agency, or seek any injunctive relief. The record establishes that the City first requested an order directing defendant to submit restoration plans to CPC in its November 11, 1993 motion for summary judgment.

This argument by Delafield 246 ignores the course of the proceedings, and the unique circumstances of this case. Between August 1991, when Zion purchased the property, and November 1993, the time of the first motion for summary judgment, it became clear that the parties could not agree on how to restore the property, and the proceedings were at an impasse. The City concluded at this point that it would have to seek judicial intervention to compel Delafield 246 to restore the property. Having chosen this course, the City was obligated to proceed in conformity with its own zoning requirements.

■ Under New York City Zoning Resolution (ZR) 105-45, the City Planning Commission has exclusive jurisdiction to specify the manner in which natural features and vegetation may be removed, altered, relocated or replaced in a Special Natural Area District, which the Delafield Estate is. ZR 105-45 requires "prior approval by the City Planning Commission" for any alterations, and if such prior approval is not obtained "the Commission may specify the manner of their replacement or restoration." Accordingly, the relief requested in the City's summary judgment motion is mandated by law. Further, the requirement of submission of plans to CPC does not alter the *type* of relief initially requested by the City, that is, specific performance of the obligations in the agreements; it merely requires administrative oversight to ensure compliance with these zoning restrictions. Given the City's unique role in this matter, we believe the IAS Court properly granted the City relief not specifically requested in its complaint (*see*, CPLR 3017 [a]; *City of New York v Ambrosino Constr. Corp.*, 197 AD2d 427 [even though City only sought forfeiture of property in its pleadings, the court was not jurisdictionally barred from directing execution on bond]).

■ In a related argument, Delafield 246 claims that the City waived its right to the relief it now requests by participating in the 1994 hearing. This contention may be quickly rejected. The record establishes that the Assistant Corporation Counsel stated on several occasions that while he would participate in the hearing to accommodate resolution of the problem, he was not withdrawing the City's demand for an order directing Delafield 246 to submit plans to CPC, and for summary judg-

ment on the City's complaint. Clearly, this was no waiver (*see, Petnel v American Tel. & Tel. Co.*, 284 App Div 1094).

■ The City also raises a preservation argument on appeal. Delafield 246 argues in its brief that the motion court should have dismissed the causes of action in the complaint pertaining to violations of the Declaration, because that document authorizes the City to bring suit only if "the Department of Buildings has issued a notice of violation in accordance with existing procedures of any conditions or obligations contained herein." Delafield 246 contends that this condition precedent was not met because the violations issued to its predecessor in November 1988 were for failure to provide fencing around the excavated foundation pits, and not for any specific violations of the Declaration. We find that Delafield waived the defense of nonperformance of a condition precedent by failing to include it among the 18 affirmative defenses in its amended answer or to submit a motion to further amend its answer (CPLR 3015; *First N. Mortgagee Corp. v Yatrakis*, 154 AD2d 433), and by raising it for the first time on appeal (*supra*). Unlike *Allis-Chalmers Mfg. Co. v Malan Constr. Corp.* (30 NY2d 225), cited by Delafield 246, compliance with the condition precedent was not specifically pleaded in the City's complaint, and, therefore, the general denial in Delafield 246's answer was insufficient to place this matter in issue.[3]

■ Having resolved these preliminary matters, the crucial question on this appeal is whether the covenants or obligations in the Declaration and the Agreement are binding on Delafield 246, a successor owner to one of the original parties to these agreements. Not surprisingly, the parties rely on divergent analyses to reach their conclusions. The City defines the covenants and obligations in terms of a municipality's exercise of its zoning power, while Delafield 246 treats them as merely private covenants. While the analyses are distinct, the determinations as to whether the covenants are binding on successors result in the same conclusion: the covenants in the Declaration and the Agreement are binding on Delafield 246.

The City contends that the agreements were a proper exercise of its zoning power. It is an accepted practice that a municipality may impose appropriate conditions in conjunc-

---

**3.** Violations were issued by a Department of Buildings Inspector in 1988 and 1994, but the 1994 violations were dismissed due to lack of notice. The Administrative Law Judge also criticized the actions of the City's attorney in accompanying the inspector to the site. However, as noted, Delafield 246 has waived these arguments.

tion with a zoning change, or a grant of a variance or special permit (*see, Matter of St. Onge v Donovan,* 71 NY2d 507; *Matter of Dexter v Town Bd.,* 36 NY2d 102). The conditions imposed, however, must be reasonable and be " 'directly related to and incidental to the proposed use of the property' " (*Matter of St. Onge v Donovan, supra,* at 516, quoting *Matter of Pearson v Shoemaker,* 25 Misc 2d 591, 592), in a manner aimed at minimizing the impact to the area as a result of the variance or permit. Examples of proper zoning conditions include those requiring fences, safety devices, landscaping, screening and outdoor lighting (*see, Matter of Pearson v Shoemaker, supra,* at 592), or those limiting the maximum area of the property that may be occupied by buildings, or which require the planting of shrubbery (*see, Church v Town of Islip,* 8 NY2d 254, 259).

Conversely, zoning boards may not impose conditions which are unrelated to the purposes of zoning (*Matter of St. Onge v Donovan, supra; see also,* 2 Anderson, New York Zoning Law and Practice § 23.55 [3d ed]), such as those which seek to regulate an enterprise being operated on the premises, or those which pertain to a different parcel of land rather than pertaining to the use of land that is the subject of the variance or permit (*Matter of St. Onge v Donovan, supra,* at 516-517). Fundamentally, the conditions must relate to the land, and not the person who owns or occupies it (*Matter of Dexter v Town Bd., supra,* at 105).

Moreover, as in this case, the process of "conditional zoning" may be accomplished by the municipality's conditioning the zoning amendment on the execution of a declaration restricting the use of the property by private parties interested in rezoning the property (*see, Collard v Incorporated Vil. of Flower Hill,* 52 NY2d 594). Further, once the conditions are incorporated into the amending ordinance, those conditions effectively become part of the zoning law (*supra,* at 602 [when conditions are incorporated in an amending ordinance, the result is as much a " 'zoning regulation' " as an ordinance adopted without conditions]). Further, so long as the conditions imposed are consistent with the purposes of zoning, they are binding on successor owners (*see, Matter of Trinity Place Co. v Finance Adm'r of City of N. Y.,* 38 NY2d 144; *Eagle Tenants Corp. v Fishbein,* 182 AD2d 610).

In contrast, Delafield 246 and the IAS Court analyzed the question of whether the Declaration and the Agreement should be given binding effect in terms of the law governing private

covenants. Generally, affirmative covenants will not be binding on subsequent grantees unless certain long-established conditions have been met (*Eagle Enters. v Gross*, 39 NY2d 505, 507-508; *Nicholson v 300 Broadway Realty Corp.*, 7 NY2d 240, 244; *Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY 248, 254-255). This is true even if the covenants themselves provide that they are to run with the land and bind all successors and assigns. In the landmark *Neponsit* case, the Court of Appeals explained that affirmative covenants will run with the land only if it is shown that: (1) the original grantee and grantor intended that the covenant run with the land; (2) there was privity of estate between the party claiming the benefit of the covenant and the right to enforce it and the party upon whom the burden of the covenant is to be imposed; and (3) the covenant "touches and concerns" the land with which it runs (*Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank, supra,* at 254-255; *Eagle Enters. v Gross, supra,* at 508).

It is the third prong of this test that usually presents the most difficult question. As the IAS Court noted, "the question whether a covenant is so closely related to the use of the land that it should be deemed to 'run' with the land is one of degree, dependent on the particular circumstances of a case" (*Eagle Enters. v Gross, supra,* at 510). The key inquiry is whether the covenant in purpose and effect substantially alters the legal rights that would otherwise flow from the ownership of the land, and are connected with the land (*Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank, supra,* at 258; *Eagle Enters. v Gross, supra,* at 509).

A common thread runs between the zoning and private covenant analyses. The greater the degree the covenant imposes obligations unique to the covenantors, which cannot exist independently of them, the less likely the covenant will be a valid condition of a zoning resolution, or a covenant that touches and concerns the land. Conversely, the greater the effect of the covenant on the land itself, without regard to who owns it, the more likely it will be binding on successor owners. The question of how to apply these principles to the specific covenants at issue remains.

First, the IAS Court found that the Declaration's covenant to preserve or replace trees, by its very character, was intended "to preserve and protect the natural features and ecological balance of the property", and therefore touched and concerned the land and was binding on successor owners. We agree with

this conclusion since the covenant plainly related to the land and substantially affected the owner's rights thereto (*see, Matter of St. Onge v Donovan, supra; Eagle Enters. v Gross, supra*). This determination is not challenged by Delafield 246 on appeal.

Next, the IAS Court found that Delafield Limited's obligation in the Agreement to install a fire alarm system resembled a personal, contractual promise that did not run with the land. It held that both the specified two-year time period for the completion of installation, and the existence of the surety bond to protect the City in the event Delafield Limited failed to perform, belied any notion that the covenant ran with the land. We disagree, as this covenant substantially affected the ownership rights of both parties. In addition to its obligation to install the fire alarm, Delafield Limited was required to improve certain streets, install sewers, hydrants and sprinkler systems. In consideration, the City agreed to demap a portion of the area and accept a sewer easement. This exchange of rights did not merely affect the owners of the land, but was of the type that traditionally binds successor owners, and constitutes a valid condition on zoning permits (*see, e.g., Riverton Community Assn. v Myers*, 184 AD2d 1063; *Arroyo v Marlow*, 122 AD2d 821; *Collard v Incorporated Vil. of Flower Hill, supra*).

The IAS Court's reliance on the time restrictions and the surety bond to conclude that the covenants did not run with the land is misplaced. In our view, the imposition of reasonable deadlines for completion of the project, and securing bonding protection in the event of default, are merely a reflection of prudent business practices. Also, that a particular covenant was bonded does not necessarily make it personal. The IAS Court found that the covenant to protect the trees ran with the land, despite the existence of a bond on that covenant.

For similar reasons, the IAS Court's finding that the covenant "to construct an underground garage and regrade the surface consistent with the surrounding terrain" was an affirmative covenant that did not run with the land was error. The City points out that it did not request that the garage construction be completed, but only that the surrounding terrain be regraded. Viewed in this context, we perceive no distinction between this covenant and that pertaining to the preservation of the trees. Both permitted the landscape to be altered during construction, but also required that each aspect of the topography be restored upon completion. This covenant is binding on Delafield 246.

■ The IAS Court's determination that the causes of action for restoration of the mansion and for restoration of the locations of the unbuilt units were moot was also error. The Declaration provided that if the three units scheduled to be built in the mansion were not completed within the period specified, the owner covenanted to "preserve and protect the mansion to the greatest extent feasible against damage by elements, vandalism, infestation and other similar circumstances." The IAS Court found that this covenant ran with the land "only so long as the mansion remained in existence." We take a different view, and conclude that this covenant to preserve the mansion ran with the land, and is not void because it was not fulfilled in the first place. At a minimum, this covenant requires the owner to submit plans to restore the property in a manner consistent with the surrounding property.

As to the restoration of the locations of the unbuilt units, the IAS Court improperly dismissed this cause of action on the ground that the City could pursue other "administrative remedies." This conclusion was based on the belief that the open foundation pits had already been filled, a fact the City disputes. However, since this covenant also touched and concerned the land, the proper remedy is that requested by the City, namely, that Delafield 246 submit proof of compliance with this covenant to CPC, or submit plans to restore these sites pursuant to the Declaration.

■ Significantly, Delafield 246 cannot claim lack of actual and constructive notice of the covenants at the time of the purchase (*see, Westmoreland Assn. v West Cutter Estates,* 174 AD2d 144, 151-152). In support of its motion for summary judgment, the City submitted an affidavit from the president of the Delafield Estates Homeowners' Association relating his conversation with Zion, Delafield 246's principal, at the auction. During that conversation, the president told Zion that there were "problems with the property, and that the buyer had an obligation to fulfill various City and State requirements." After the auction, the president showed Zion the property, made him aware of his obligations to the Homeowners' Association and told him where he could obtain a copy of the Declaration and the Offering Plan. Zion, in his affidavit in opposition, does not directly dispute receiving this information.

Zion also received constructive notice of the obligations in the Declaration and the Agreement. Both documents were recorded with the County Clerk, and both were approved by resolutions of CPC and the Board of Estimate. Thus, Zion and

Delafield 246 were aware, or should have been, that the property was subject to certain restrictive covenants and zoning resolutions. They are thus bound by them (*see, Cohalan v Lechtrecker*, 84 AD2d 775, 777 ["(t)he recorded declaration manifested to all prospective buyers the restriction which limited the use of the property"], *affd for reasons stated* 56 NY2d 861).

Additionally, these covenants do not impose a " 'burden in perpetuity' " (*Eagle Enters. v Gross, supra,* at 510), a concern recognized by the Court of Appeals regarding affirmative covenants. Here, once the owner (now Delafield 246) fulfills its obligations under the Declaration and the Agreement, the duty is fulfilled. And, as the City notes, even though the covenants are binding on Delafield 246, the Declaration itself provides that its provisions may be "amended, modified or cancelled" with the approval of the parties, CPC and the Board of Estimate. Thus, if a change of circumstances resulted in an onerous burden being placed on Delafield 246, it could petition for a modification of the agreements, and a new zoning amendment (*see, Matter of Trinity Place Co. v Finance Adm'r of City of N. Y.,* 38 NY2d 144, 149, *supra; Thomas v June,* 194 AD2d 842, 845)

Delafield 246 also claims that the City's action is time barred pursuant to RPAPL 2001. This contention is meritless. RPAPL 2001 does not create a Statute of Limitations; rather, it presumes that a plaintiff has released his cause of action if it is not commenced within two years of a specified occurrence, and must be asserted by a defense of release (*see, Rahabi v Morrison,* 81 AD2d 434, 439). No defense of release was asserted here. In any event, this action was commenced within *six months* of the City's February 1989 demand that Delafield Associates fulfill its obligations under the agreements. Accordingly, this action for injunctive relief is governed by the six-year Statute of Limitations in CPLR 213 (1) (*supra,* at 439), and was timely asserted.

Delafield 246 also contends that the City should be estopped from seeking summary judgment against it because the City has already won summary judgment for the same relief on its causes of action against the sureties in 1991. We reject this contention because the causes of action against the owner and sureties were separate and distinct, and the relief sought was not the same. The City sought specific performance of the restoration work against both Delafield 246 and the sureties, but payment on the bonds only from the sureties.

Having received only the latter, and with the restoration work still uncompleted, the City's motion for summary judgment is not barred.

Delafield 246 also asserts that if it is required to do the restoration work, it should be afforded credit for the full value of the performance bonds ($255,000), rather than the $150,000 obtained by the City in settlement. It maintains it was not a party to that settlement, and did not consent to it. However, Delafield 246 has no rights with respect to the bonds. The purchaser of the bonds was Delafield Limited, and the obligee was the City. While the City is bound to apply the proceeds of the bonds to the restoration work (the City concedes this), Delafield 246 cannot alter the terms of a transaction in which it took no part. In any event, Delafield 246 may not complain since the record is clear that its counsel informed the City, on more than one occasion, that it intended to complete the restoration work and that the $150,000 settlement proceeds were sufficient to accomplish this task. Ultimately, Delafield 246's obligations as the owner of land subject to binding covenants exist independently of the sureties' obligations to pay on their bonds, and satisfaction of the sureties' obligation does not relieve Delafield 246 of its duty to comply with the covenants.

Delafield 246's remaining contentions are without merit.

Accordingly, the order of the Supreme Court, New York County (Fern Fisher-Brandveen, J.), entered April 18, 1996, which denied plaintiff's motion for summary judgment on all of its causes of action, except the first and second, which it granted to the extent of directing a hearing, and the ninth, which it granted to the extent of directing defendant to post new bonds before commencing any new construction, and granted defendant's cross motion to the extent of dismissing the fourth, sixth, eighth, ninth and tenth causes of action, and directed a hearing with respect to the first and second causes of action, should be modified, on the law, plaintiff is awarded summary judgment on the first, second, fourth and sixth causes of action, and defendant-respondent Delafield 246 is directed to submit restoration plans to the City Planning Commission within 90 days, and otherwise affirmed, without costs or disbursements.

ELLERIN, J. P., WALLACH and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered April 18, 1996, modified, on the law, plaintiff awarded summary judgment on the first, second, fourth and sixth causes of action,

and defendant Delafield 246 directed to submit restoration plans to the City Planning Commission within 90 days, and otherwise affirmed, without costs or disbursements. [*See*, — AD2d —, Nov. 20, 1997.]