[820 NYS2d 557]

328 Owners Corp., Respondent-Appellant, v 330 West 86 Oaks Corp., Respondent, 330 West 86th Street, LLC, Appellant-Respondent, and City of New York, Respondent-Appellant.

First Department, August 17, 2006

### APPEARANCES OF COUNSEL

*Edward B. Safran,* New York City, for appellant-respondent.

*Michael A. Cardozo, Corporation Counsel,* New York City (*Tahirih M. Sadrieh, Edward F.X. Hart* and *Warren Shaw* of counsel), for municipal respondent-appellant.

*Marcus Rosenberg & Diamond LLP,* New York City (*David Rosenberg* of counsel), for 328 Owners Corp., respondent-appellant.

*Paul, Hastings, Janofsky & Walker LLP,* New York City (*David Fleischer* and *David Park* of counsel), for 330 West 86 Oaks Corp., respondent-respondent.

MAZZARELLI, J.P.

The subject of this appeal is the future of a five-story multifamily dwelling, located at 330 West 86th Street, between Riverside Drive and West End Avenue. The building presently contains eight apartments. Its current owner, defendant 330 West 86th Street, LLC, allegedly wishes to demolish the premises and construct a high-rise apartment building. Most of the buildings currently on the block are taller than 330 West 86th Street, and are apartment buildings.

The City acquired title to 330 West 86th Street through a tax foreclosure proceeding. At that time, the building, a rowhouse constructed in 1900, had significantly deteriorated. It had numerous municipal code violations, and was in need of rehabilitation. In or about 1997, the City, through its Department of Housing Preservation and Development (HPD), determined that the building was appropriate for a private sale, in "as is" condition, under the Urban Development Action Area Act (UDAAA).

UDAAA, codified at General Municipal Law, article 16, §§ 690-698, empowers municipalities, among other things, to dispose of city-owned real property, without public auction or sealed bids (General Municipal Law § 695 [2] [b]). The UDAAA's "Policy and purposes" are:

> "to protect and promote the safety, health, morals and welfare of the people of the state and to promote the sound growth and development of our municipalities, it is necessary to provide incentives for the correction of such substandard, insanitary, blighted, deteriorated or deteriorating conditions, factors, and characteristics by the clearance, replanning, reconstruction, redevelopment, rehabilitation, restoration or conservation of such areas, the undertaking of public and private improvement programs related thereto and the encouragement and participation in these programs by private enterprise" (General Municipal Law § 691).

Blighted properties which have been acquired by the City are overseen by an arm of HPD called the Division of Alternative Management Programs, or DAMP. DAMP provides an alternative to traditional city ownership and management of residential buildings. It administers several discretionary programs, all

of which have common goals. Those are to divest the City of its portfolio of residential real property, returning the buildings to responsible taxpaying private ownership, preventing the spread of urban blight, and maintaining affordable housing. The DAMP program involved here is called Asset Sales Building Purchase Program.

Under the Asset Sales program, properties within the City's inventory deemed marketable are sold "as is" to the private sector. To effectuate these sales, the "governing body" of the municipality must: (1) approve or waive designation of the location (of the property) as an Urban Development Action Area (area designation); (2) approve the specific Urban Development Action Area project (project approval); and (3) approve the disposition of the property. In New York City, area designation decisions and project approvals are the made by the City Council (General Municipal Law § 692 [1]). Final approval of the disposition of UDAAA property is within the discretion of the Mayor (General Municipal Law § 695 [2] [b]; [6] [d]).

The tenants residing in this building, approved as UDAAA property, were given the first opportunity to purchase the property. The statute requires that the purchasers of UDAAA properties remove all municipal code violations (see General Municipal Law § 695 [6]). For this project, the deed required the purchaser to retain existing residential tenants for two years, at current rents.

In January 1999, HPD submitted a Project Summary describing the proposed "conservation" of 330 West 86th Street to the City Council. It also requested that the City Council waive statutory requirements[1] so that the property could be conveyed expeditiously as an accelerated Urban Development Action Area project (General Municipal Law § 695 [2] [b]; [6] [d]). On June 22, 1999, after both the City Council and the Mayor gave their requisite approvals, 330 West 86 Oaks Corp. bought 330 West 86th Street for $340,000.

The deed conveying the property is a five-page document, which contains 11 recital paragraphs, a granting clause, and an

---

**1.** General Municipal Law § 693 allows for waiver of "area designation," and the cumbersome bidding and land use review procedures normally applicable to Asset Sales under the UDAAA. Waiver of "area designation" is only available for projects consisting of (1) rehabilitation or conservation of an existing private or multiple dwelling; or (2) the construction of a one- to four-unit dwelling without a change in land use.

extensive habendum clause.[2] Three exhibits are annexed to the deed: (1) a description of the disposition area; (2) the City Council resolution approving the UDAAA project;[3] and (3) the Mayor's approval.

One of the recital paragraphs in the deed states that the building is being conveyed to 330 West 86 Oaks Corp. by the City pursuant to article 16 of the General Municipal Law, that is, the UDAAA.[4] Another states that pursuant to General Municipal Law § 693, "the designation of the Disposition Area as an Urban Development Action Area [would be] waived." The recital which is at the core of this litigation states: "the project to be undertaken by [330 West 86 Oaks Corp.] consist[ed] solely of the rehabilitation or conservation of existing private or multiple dwellings or the construction of one to four unit dwellings without any change in land use permitted by existing zoning."

The habendum clause, which as noted, defines the estate or interest granted by the deed, lists four "conditions," subject to which 330 West 86 Oaks Corp. agreed to take title. For example, the deed conditioned the transfer of title to 330 West 86 Oaks Corp. upon its compliance with "building restrictions and zoning regulations in effect at the time of the closing and any facts disclosed in the City of New York tax and zoning maps and zoning resolutions."

Also included in the habendum clause, on page 3 of the deed, are three "covenants," which are expressly designated as such. Unlike the recital paragraphs and the conditions, the covenants provide for enforcement of the listed restrictions against "successors and assigns" in the event of a breach. None of the three covenants includes a restriction against the demolition of the current building and the construction of a high rise.

However, as part of the habendum clause, 330 West 86 Oaks Corp. agreed that within six months of the sale it would remove any city housing maintenance code or buildings department violations. It also promised to offer all current tenants two-year leases at no more than the rents currently paid by them. The

---

**2.** The habendum clause is defined as "[t]he part of a deed that defines the extent of the interest being granted and any conditions affecting the grant" (Black's Law Dictionary 716 [7th ed 1999]).

**3.** The Project Summary states, under "TYPE of PROJECT": "conservation."

**4.** In two of its "whereas" clauses, the deed erroneously sets forth that HPD had issued a request for offers and had selected Oaks Corp. as the purchaser pursuant to that process.

habendum clause also provides that "a default pursuant to any document between [330 West 86 Oaks Corp.] and the City shall constitute a default pursuant to the Deed."

The deed also contains a paragraph labeled "Covenants Running with Land," which states:

> "the agreements and covenants set forth in this Deed shall run with the land and shall be binding to the fullest extent permitted by law and equity. Such covenants shall inure to the benefit of the City and shall bind and be enforceable against Sponsor and its successors and assigns."

330 West 86 Oaks Corp. failed to clear any of the violations on the building and on February 13, 2001, approximately a year and a half after purchasing the property, it sold the premises to 330 West 86th Street, LLC. The price was one million dollars. At the time of the sale, this action was pending and a lis pendens had been recorded on the building.

Plaintiff 328 Owners Corp. owns the apartment building adjacent to 330 West 86th Street. It originally brought this action against 330 West 86 Oaks Corp. and the City of New York. When the property was sold, plaintiff amended the complaint to include 300 West 86th Street, LLC as a defendant. In its first cause of action, plaintiff sought a declaration that the property could only be used for: (1) rehabilitation or conservation of the existing building; or (2) construction of one- to four-unit dwellings without any change in land use. Its second cause of action was for an injunction barring 330 West 86 Oaks Corp., 330 West 86th Street, LLC, and any successors or assigns from using the subject property in any contrary fashion. The third cause of action sought an order declaring the conveyance from the City to 330 West 86 Oaks Corp. null and void. That cause of action was dismissed by the IAS court in an order dated April 5, 2002. The same order vacated the notice of pendency on the property. No appeal was taken from it.

The City answered and asserted two cross claims. The first, brought against 330 West 86th Street, LLC, sought a declaration that the subject premises may not be used other than for "conservation." Alternatively, it asked that the use of the property be limited to the rehabilitation or conservation of existing private or multiple dwellings, or the construction of one- to four-unit dwellings. The City's second cross claim sought to permanently enjoin 330 West 86 Oaks Corp., 330 West 86th

Street, LLC, and any successors, assigns and grantees from using the premises except in compliance with the above restrictions.

Defendant 330 West 86th Street, LLC moved for dismissal of the complaint and/or summary judgment. 330 West 86 Oaks Corp. then separately moved for summary dismissal of the complaint and the City's cross claim against it. The City also moved for summary judgment on its cross claims. It argued that the deed's multiple references to General Municipal Law article 16 restricted 330 West 86 Oaks to "conservation" of the subject property, and that certain recitals in the deed were in fact covenants running with the land, and binding upon 330 West 86th Street, LLC. Plaintiff also cross-moved for summary judgment on its first and second causes of action. Its arguments mirrored those of the City, and it submitted newspaper articles describing abuses involving unrelated sales of property the City had conveyed under the UDAAA.

The IAS court first determined that as an adjoining land owner, plaintiff 328 Owners Corp. had standing to bring the action. It then granted plaintiff's and the City's motions against 330 West 86th Street, LLC. It found that restrictions imposed on the use of the land by General Municipal Law article 16 were covenants which ran with the land, and bound 330 West 86th Street, LLC. The court also granted the motion of defendant 330 West 86 Oaks Corp. to dismiss any remaining claims against it. The City moved for reargument, or resettlement, arguing that the court overlooked its contention that the use of the property should be limited to "conservation," consistent with the City Council's approval of the project. The City urged that the decision be corrected to reflect that limitation and to declare that the use restrictions placed on the property run with the land. The IAS court denied reargument, but granted resettlement to the extent of declaring that the use restrictions imposed by the deed run with the land. All parties, except Oaks Corp., have appealed.

■ As a preliminary matter, defendant 330 West 86th Street, LLC argues that plaintiff 328 Owners Corp. lacks standing to bring this action. This argument should be rejected. To establish standing in this type of proceeding, a party must show that as a result of the challenged action it suffered an injury distinct from that suffered by the public at large (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 774 [1991]; *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N.*

*Hempstead*, 69 NY2d 406, 413 [1987]). Here, plaintiff is an adjacent landowner who shares a wall with the subject premises, and it seeks to enforce what it alleges are restrictive covenants to preclude 330 West 86th Street, LLC from building a high rise on the property.

Under settled law, there are four situations where a plaintiff who is not a party to a restrictive covenant may sue to enforce its terms.[5] In this action, plaintiff is asserting the right to sue under the fourth category, as "an owner of neighboring land, for whose benefit a restrictive covenant is imposed by a grantor, [who seeks to] enforce the covenant as a third-party beneficiary" (*Nature Conservancy v Congel*, 253 AD2d 248, 251 [1999]). Given that article 16 of the General Municipal Law has as one of its purposes the elimination of "negative influence[s] *on adjacent properties* impairing their economic soundness and stability" (General Municipal Law § 691 [emphasis supplied]), plaintiff is an intended beneficiary of the restrictions imposed by the UDAAA and it has standing to challenge the proposed redevelopment project.

The next issue for consideration is whether the deed and associated documents executed between 330 West 86 Oaks Corp., the purchaser of UDAAA property, and the City, as seller, contain restrictions which preclude a successive purchaser, 330 West 86th Street, LLC, from altering the use of the property. If the parties to the deed intended any restrictions imposed upon the purchaser under the accelerated UDAAA to bind subsequent purchasers, 330 West 86th Street, LLC would be precluded from implementing its proposed redevelopment plans. However, if the

---

5. In *Korn v Campbell* (192 NY 490, 495-496 [1908]) and *Vogeler v Alwyn Improvement Corp.* (247 NY 131, 135-137 [1928]), the Court of Appeals articulated the types of restrictions which may be challenged by a nonparty to the actual covenant. They are:

1. A uniform restriction imposed by a common grantor as part of a general plan or scheme for the benefit of all the grantees in a real estate subdivision or development may be enforced by all such grantees against each other.

2. A covenant imposed for the benefit of the grantor's remaining land may be enforced by the grantor against any grantees of the restricted land.

3. Mutual covenants between the owners of adjoining lands producing corresponding benefits to such owners may be enforced by the owners or their assigns against each other.

4. An owner of neighboring land, for whose benefit a restrictive covenant is imposed by a grantor, may enforce the covenant as a third-party beneficiary despite the absence of any privity of estate between the grantor and the neighbor.

deed is deemed to contain agreements binding only upon 330 West 86 Oaks Corp., and not covenants running with the land, then 330 West 86th Street, LLC is free to proceed with its plans.

Section 240 (3) of the Real Property Law governs the content of deeds and provides that: "[e]very instrument creating, transferring, assigning or surrendering an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law." The statute guides us in determining whether, in a deed, the parties have, or have not, created covenants running with the land (*see Suffolk Bus. Ctr. v Applied Digital Data Sys.*, 78 NY2d 383 [1991]). We are also guided by the principle that "the law has long favored free and unencumbered use of real property, and covenants restricting use are strictly construed against those seeking to enforce them" (*Witter v Taggart*, 78 NY2d 234, 237 [1991]; *Huggins v Castle Estates*, 36 NY2d 427 [1975]; *Buffalo Academy of Sacred Heart v Boehm Bros.*, 267 NY 242 [1935]). Thus, restrictive covenants will only be enforced where the dominant landowner has established their existence by clear and convincing evidence (*Witter v Taggart*, 78 NY2d at 238; *Huggins v Castle Estates*, 36 NY2d 427, 430 [1975]; *Doin v Bluff Point Golf & Country Club*, 262 AD2d 842, 842-843 [1999], *lv denied* 94 NY2d 753 [1999]; *Bear Mtn. Books v Woodbury Common Partners*, 232 AD2d 595, 596 [1996], *lv denied* 90 NY2d 808 [1997]; *Sunrise Plaza Assoc. v International Summit Equities Corp.*, 152 AD2d 561 [1989], *lv denied* 75 NY2d 703 [1990]). They will not be imposed where the evidence is equivocal.

Even where a deed contains recitals expressly stating that restrictive covenants "run with the land," a specific promise is "generally not binding upon subsequent grantees of the promisor unless certain well-defined and long-established legal requisites are satisfied" (*Eagle Enters. v Gross*, 39 NY2d 505, 507 [1976]; *Nicholson v 300 Broadway Realty Corp.*, 7 NY2d 240, 244 [1959]; *Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY 248, 254-255 [1938]).

The seminal case on the issue is *Neponsit*. In that case, the Court of Appeals stated the conditions necessary to create a covenant which "runs with the land." The Court held that a party claiming the benefit of a covenant could only enforce its rights against a successive purchaser where: (1) the original grantee and grantor intended that the covenant run with the land; (2) there was privity of estate between the party claiming the bene-

fit of the covenant and the right to enforce it and the party upon whom the burden of the covenant is to be imposed; and (3) the covenant "touches and concerns" the land (*Neponsit*, 278 NY at 254-255; *accord Eagle Enters.*, 39 NY2d at 508).

■ Applying the *Neponsit* test to these facts, we first look to see what the grantor and grantee intended. We need only to look at the language of the deed to make that determination. Notably, the provision concerning the rehabilitation of the property was in the recital portion of the deed, not the habendum clause. Also, the paragraph restricting the use of the land did not refer to 330 West 86 Oaks Corp.'s "successors and assigns." Such language, however, was included in every one of the covenants in the habendum clause of the deed, which clearly do run with the land. While the City, as original grantor, now claims it intended that this property be rehabilitated and conserved as a five-story residential building, it failed to state this intent clearly in the deed, which it drafted. Certainly, subsequent events make it plain that 330 West 86 Oaks Corp. did not share an intent that the property be so restricted. Accordingly, the first of the *Neponsit* elements, shared intent that a covenant run with the land, has not been satisfied.

The second element is "privity of estate," defined as "[a] mutual or successive relationship to the same right in property, as between grantor and grantee or landlord and tenant" (Black's Law Dictionary 1218 [7th ed 1999]). While the defendants City, 330 West 86 Oaks Corp. and 330 West 86th Street, LLC, as successive owners of the same tract of land, are considered in "privity of estate" (*see Stasyszyn v Sutton E. Assoc.*, 161 AD2d 269 [1990]), none of these defendants shares that relationship with plaintiff 328 Owners Corp. Thus, while the City has satisfied the second *Neponsit* requirement with respect to its cross claims against 330 West 86th Street, LLC, plaintiff 328 Owners Corp. has not satisfied this element with respect to any of the defendants.

The third element is that the covenant "touch and concern" the land. Dispositive on this issue is whether a covenant in purpose and effect substantially alters the legal rights that would otherwise flow from the ownership of the land, and are connected with the land (*Neponsit*, 278 NY at 258; *Eagle Enters.*, 39 NY2d at 509). Stated otherwise:

> "The greater the degree the covenant imposes obligations unique to the covenantors, which cannot

exist independently of them, the less likely the covenant will be . . . a covenant that touches and concerns the land. Conversely, the greater the effect of the covenant on the land itself, without regard to who owns it, the more likely it will be binding on successor owners."

(*City of New York v Delafield 246 Corp.*, 236 AD2d 11, 24 [1997], *lv denied* 91 NY2d 811 [1998].) For example, in *Neponsit*, the Court held that certain covenants requiring the property owners in a development to pay an annual charge for the maintenance of roads, paths, parks, beaches, sewers and other public improvements "touched and concerned" the land (278 NY at 259-260). We reached the same conclusion in *Delafield* with respect to a covenant to preserve and replace trees on the subject property, because the restriction "was intended 'to preserve and protect the natural features and ecological balance of the property' " (236 AD2d at 24).

Here, 330 West 86 Oaks Corp. purchased 330 West 86th Street from the City under General Municipal Law article 16. It was supposed to rehabilitate deteriorated property and remove numerous housing and building code violations. 330 West 86 Oaks was also required to allow the existing tenants to remain in the building for two years, without an increase in their rent. These promises were unique to the parties. The deed contains time frames, consistent with the UDAAA's intent that the rehabilitation project be completed promptly. These requirements are entirely dissimilar to the covenants in *Neponsit* (*supra*) and *Delafield* (*supra*), which had no durational requirements.

As noted, by their nature, covenants running with the land do not have a specific duration. By contrast, General Municipal Law § 695 (5), which governs all UDAAA properties, requires:

"the purchaser . . . [to] redevelop such property in accordance with the urban development action area project as approved by the governing body and *within a definite and reasonable period of time* subject to the terms of the . . . deed relating thereto between the municipality and the sponsor, and shall contain provisions insuring the use of such real property for purposes consistent with such urban development action area project" (emphasis supplied).

By requiring a time frame for the completion of Urban Development Action Area projects, the Legislature has indicated an

intent to encourage swift rehabilitation of substandard property. The perpetual encumbrance sought by plaintiff is inconsistent with the purpose of the statute, and likewise such a time restriction is inconsistent with a covenant running with the land. Thus, the third prong of the *Neponsit* test is also not met, and the contested covenant is not a covenant running with the land.

The fact that the property was conveyed under the "accelerated UDAAP provisions" does not alter this conclusion. 330 West 86 Oaks Corp. did obtain the benefit of accelerated approval of its purchase of the property upon a representation that the improved property would be rehabilitated or conserved, or that a one- to four-unit dwelling would be constructed without any change in land use. It also undeniably defaulted in its obligations to the City. The remedy for such breach may have been a suit by the City for rescission of the original deed with 330 West 86 Oaks Corp., or an action against 330 West 86 Oaks Corp. for breach of its promises. However, 330 West 86th Street, LLC is not responsible for the breaches of its predecessor with respect to the duty to rehabilitate the blighted property, and the cited use restrictions are not binding upon it.

The deed between 330 West 86 Oaks Corp. and the City is unambiguous. There are no covenants in the habendum clause restricting future use of this property. Certainly, if such restriction were to have been a part of the transfer, it could easily have been included and spelled out as clearly as the law requires. Because said restrictions bind into the future without end, the law requires that they be clear, so that all taking the property in the future will be on notice. As there was no covenant in the deed restricting defendant 330 West 86th Street, LLC's use of the property, both plaintiff's claims and the City's cross claims should have been rejected. While the result we reach is troubling in that the City's intentions in conveying the property have been frustrated, our function is to apply the law.

Accordingly, the amended order and judgment (one paper) of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered March 23, 2005, which, to the extent appealed from, (1) granted the summary judgment motions brought by plaintiff 328 Owners Corp. and the City of New York to the extent of declaring that the property located at 330 West 86th Street may not be used other than for (a) rehabilitation or conservation of the existing building thereon, or (b) construction of one- to four-unit dwelling without any change in land use; and (2)

denied defendant 330 West 86th Street, LLC's motion for summary judgment against plaintiff 328 Owners Corp. and the City, should be reversed, on the law, without costs, defendant 330 West 86th Street, LLC's motion granted, plaintiff 328 Owners Corp.'s motion and the City' motion on its cross claims denied, and it is declared that the property may be used for purposes other than the rehabilitation or conservation of the existing buildings thereon, or the construction of one- to four-unit dwellings without any change in land use. The appeal from the order and judgment (one paper), same court and Justice, entered November 5, 2003, should be dismissed, without costs, as superseded by the appeal from the amended order and judgment (one paper).

ANDRIAS, J. (dissenting). The building in question, a five-story brownstone on West 86th Street, was conveyed by the City pursuant to article 16 of the General Municipal Law as an accelerated Urban Development Action Area Project (UDAAP). The facts are undisputed and are fairly stated by the majority.

Relying upon the three-prong test formulated by the Court of Appeals in *Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank* (278 NY 248, 254-255 [1938]), the majority finds that because the provision in the deed stating that the building was being conveyed by the City pursuant to article 16 of the General Municipal Law is contained in the precatory, whereas or recital clauses and not in the granting or habendum clauses and did not include any reference to 330 West 86 Oaks Corp.'s "successors and assigns," the City failed to state such intent clearly in the deed. This is simply incorrect.

The majority finds that 330 West 86 Oaks Corp. obtained the benefit of the accelerated UDAAP provisions and undeniably defaulted in its obligations under the deed. Nevertheless, it accepts the new owner's argument that restrictive covenants are to be strictly construed against those seeking to enforce them and that the recitals in the deed and resolutions incorporated therein have no legal effect, and it holds that the new owner, which bought the building after the commencement of this suit and subject to a lis pendens, is not responsible for the breaches of its predecessor in interest with respect to the duty to rehabilitate the existing building or to construct a one- to four-unit dwelling without a change in land use as required by the City Council resolution accelerating the process and the Mayor's approval of the sale. However, regardless of whether the covenants restricting the use of the land are deemed to run with the

land or not, the habendum clause, upon which the majority places such emphasis, specifically provides that the agreements and covenants set forth in the deed "shall inure to the benefit of the City and shall bind and be enforceable against Sponsor and its successors and assigns."

The majority nevertheless finds that because 330 West 86 Oaks Corp. was required by the express terms of the deed to allow the existing tenants to remain in the building for two years without a rent increase and by General Municipal Law § 695 (5) to rehabilitate the building "within a definite and reasonable period of time," such requirements are dissimilar to the covenants in *Neponsit* and *City of New York v Delafield 246 Corp.* (236 AD2d 11 [1997]), which had no durational requirements. However, the majority's reliance on such time limits to conclude that the covenants do not run with the land is misplaced inasmuch as the imposition of reasonable deadlines for completion of the project is "merely a reflection of prudent business practices" (*Delafield 246 Corp., supra* at 25). It also concludes that, by requiring a time frame for the completion of the rehabilitation project, the perpetual encumbrance sought is inconsistent with the purpose of the statute.

However, there is simply no basis for such a restrictive reading of the statute. In fact, General Municipal Law § 691, which sets forth the policy and purposes of the Urban Development Action Area Act, gives no indication that it is intended for the short-term effect the majority would accord it. It declares, among other things, that it must be the public policy of the State's municipalities "to assure that each segment of our society, particularly enterprises experienced in the construction of one to four family residential structures . . . , is accorded a real and proper ability to participate in projects to be undertaken pursuant to this article." The majority's holding, which would permit the demolition of the existing five-story brownstone and the construction of a high rise "needle" apartment building in its place, rather than effectuating the legislative intent for the program, perpetuates a fraud against the public fisc.

The City, as a municipal corporation, is not free, as is a private property owner, to sell or convey municipally owned property under any terms and conditions it chooses. The power to sell such property is derived solely from the General Municipal Law. In this case, the City is empowered to dispose of city-owned real property, without public auction or sealed bids, solely for the purpose of providing incentives and encouraging participation

of private enterprise in the rehabilitation of substandard residential buildings. In this case 330 West 86 Oaks Corp. was formed by the building's tenants under the guidance of the City for that express purpose.

Moreover, even if the deed's recitals may not constitute a restrictive covenant in and of themselves, they are very important in determining the intention of the parties, which is to be determined "so far as such intent can be gathered from the whole instrument" (Real Property Law § 240 [3]). Even where the intentions of the parties, which are paramount, notwithstanding the rule requiring the strict construction of restrictive covenants, are not clear from the instrument itself, they may be gleaned from all the surrounding circumstances (*see Jennings Beach Assn. v Kaiser*, 145 AD2d 607, 608 [1988]). Generally a recital clause which merely evinces a goal is not binding; however, in this case the recital clauses in the deed and the implementing documents attached thereto and made a part thereof are the legal basis for the conveyance and the use of the subject building that is mandated by such conveyance. To construe the deed and the attached documents otherwise not only exalts form over substance, but ignores the statutory underpinnings for such approvals and renders the basis of the entire conveyance meaningless and invalid.

This is not an instance where a private homeowner conveys a piece of adjoining land with the intention of restricting its use to the construction of a one-family home, but fails to include such restriction in the deed. Here, the only authority for the conveyance is part and parcel of the statutory purpose of the conveyance and without such purpose, the deed is unlawful and cannot be enforced.

The motion court properly held that

> "where as here, a deed 'derives all its validity' from a special statutory provision, that provision 'will be construed into and with the deed' *Matter of Lade v Abbott*, 185 Misc 501, 507 (Sup Ct, Onondaga County 1945), quoting 26 CJS, Deeds § 81. *See also United States v The City of New York*, 233 F2d 307 (2d Cir 1956)."

As found by the court, the deed specifically provides that it is subject to the provisions of all local and state laws and regulations, including General Municipal Law § 695 (5), which requires that the deed "contain provisions insuring the use of

such real property for purposes consistent with such urban development action area project," in this case the rehabilitation and renovation of the existing building or the construction of a one- to four-unit dwelling without a change in land use.

Accordingly, the motion court properly declared that the covenants in the deed run with the land and the orders appealed from should be affirmed in all respects.

SULLIVAN and WILLIAMS, JJ., concur with MAZZARELLI, J.P.; ANDRIAS and MALONE, JJ., dissent in a separate opinion by ANDRIAS, J.

Amended order and judgment (one paper), Supreme Court, New York County, entered March 23, 2005, reversed, on the law, without costs, defendant 330 West 86th Street, LLC's motion for summary judgment granted, plaintiff 328 Owners Corp.'s motion for summary judgment and the City's motion on its cross claims denied, and it is declared that the property may be used for purposes other than the rehabilitation or conservation of the existing building thereon, or the construction of one- to four-unit dwelling without any change in land use. Appeal from order and judgment (one paper), same court, entered November 5, 2003, dismissed, without costs, as superseded by the appeal from the amended order and judgment.